**STATE of Missouri, Plaintiff–Respondent,**

v.

**Michael David FEWELL, Defendant–Appellant.**

**No. 26949.**

Missouri Court of Appeals, Southern District, Division One.

Aug. 30, 2006.

Rosalynn Koch, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen. and Shaun J. Mackelprang, Office of Atty. Gen., Jefferson City, for respondent.

KENNETH W. SHRUM, Judge.

The State charged Mike Fewell ("Defendant") with committing separate sexual offenses against his twelve-year-old stepdaughter. He was charged in Count I with first-degree statutory rape (§ 566.032) and in Count II with first-degree statutory sodomy (§ 566.062).[1] A jury convicted him of the Count I charge (rape). As to Count II, Defendant was convicted of a lesser included offense of first-degree child molestation. (§ 566.067). Defendant raises three points on appeal, requesting plain error review on each issue. We affirm.

## STANDARD OF REVIEW

■ To obtain relief per the plain error rule, Defendant must show that an "error affected his rights so substantially that a miscarriage of justice or manifest injustice will occur if the error is left uncorrected." *State v. Rutherford,* 967 S.W.2d 679, 682 (Mo.App.1998). "Plain errors are evident, obvious, and clear, and we determine such errors exist based on the facts and circumstances of each case." *State v. Johnson,* 150 S.W.3d 132, 136[4] (Mo.App.2004).

■ A plain error claim must establish *on its face* substantial grounds for us to believe a manifest injustice or miscarriage of justice will result if the error is left uncorrected. *Id.* at 136[5]. The plain error rule is to be used sparingly, and it does not provide an avenue of relief for every trial court error that has not been properly preserved. *Id.* at 136[3].

## FACTS

J.H. ("Victim") was born March 30, 1993, and, at the time of the crimes, was living with her mother and Defendant, her stepfather. On January 3, 2004, Defendant walked into Victim's room and began rubbing her back. Soon, he took Victim's clothes off and started "touching" her "on the vagina." Then, Defendant raped Victim. This occurrence was the basis for the Count I charge of statutory rape. The next night, Defendant again approached Victim in her room. His conduct on this occasion included sticking his finger into her vagina. This incident was the basis for the Count II charge of statutory sodomy.

On January 6, 2004, Victim told a school counselor, Shirley Fickie ("Fickie"), of the sexual abuse. At Defendant's trial, Fickie testified what Victim told her, namely, that Defendant touched Victim "around her vaginal area" and raped her.

On that day, Fickie reported the abuse, and deputy John Loveless ("Loveless") responded to the school. Loveless also testified at Defendant's trial and told the jury what Victim stated to him in an interview. At that time, Victim told Loveless that Defendant penetrated her vagina with his finger and raped her on both nights.

At some point, Victim's mother arrived at the school and called Victim's grandmother, Laura Scott ("Grandmother"), telling her that "something happened" to Victim, "that she had been bothered." Grandmother, not knowing that Defendant was the accused, informed Defendant that "something had happened" to Victim and she was being taken to a child advocacy center. Defendant then began to drink heavily, even though it was unusual for him to get intoxicated. In fact, Defendant got so drunk that he vomited on himself

1. All statutory references are to RSMo (2000), unless indicated otherwise.

and urinated in his pants before he was arrested around 7:00 p.m. that night.

During Defendant's drinking binge, he kept saying to Grandmother, "I'm sorry, I didn't hurt her, I didn't hurt her." After a couple of phone calls from Mother, Grandmother found out that Defendant was being accused of the sexual abuse, and Grandmother "[f]irst ... wanted to get [her] gun," but grabbed a pole instead and attacked Defendant. At this point, Loveless had arrived to arrest Defendant.

At Defendant's preliminary hearing, Victim recanted her sexual abuse allegations. At the criminal trial, Victim told the jury that Defendant stated he would adopt her if she changed her story, and this is the reason she lied at the preliminary hearing, i.e., she wanted to have a real father. Mother forced Victim to speak with Defendant even though she was told to allow no contact between the two. Apparently, Mother did so because she did not believe Victim. During this conversation, Defendant also told Victim that "it wouldn't happen again."

Defendant was charged with statutory rape and statutory sodomy, but the jury was also instructed on first-degree child molestation as a lesser included offense of statutory sodomy. The jury found Defendant guilty of the rape and molestation counts. He was sentenced to consecutive terms of ten years' and five years' imprisonment, respectively. This appeal followed.

### Point I: Plain Error in Submitting Child Molestation to Jury?

Defendant's first point maintains the trial court plainly erred when it gave the jury an MAI–CR3d 320.03 instruction on sodomy but accompanied it with an instruction that permitted the jury to find Defendant guilty of first-degree child molestation as a lesser included offense of sodomy. Specifically, Defendant asserts, "there was no basis in the evidence to acquit him of statutory sodomy and convict him of the lesser offense." Based on that premise he insists a manifest injustice and miscarriage of justice occurred when the jury was permitted, via instruction, to decide if he was guilty of first-degree child molestation.

An accused commits statutory sodomy in the first degree if that person engages in deviate sexual intercourse with a person under 14 years old. *State v. Pond,* 131 S.W.3d 792, 793[3] (Mo.banc 2004). "Deviate sexual intercourse" requires proof of "'penetration, however slight, of the male or female sex organ.'" *Id.* at 793 (citing § 566.010(1)).

"Child molestation in the first degree occurs when an accused has sexual contact with another person less than [14 years old]." *Id.* at 794. Sexual contact means any touching of the genitals. *Id.* "Penetration is not an element of child molestation in the first degree." *Id.*

In his brief, Defendant acknowledges that "child molestation is a lesser included offense of first degree statutory sodomy[ ]" and cites cases which so hold. *See Pond,* 131 S.W.3d at 793; *State v. Barnard,* 972 S.W.2d 462, 463 (Mo.App.1998). However, he argues that the facts here distinguish it from *Barnard* (where the accused confessed to touching the victim on her vagina) and from *Pond* (where evidence was such that the jury could have believed part of victim's testimony that the accused touched her, but disbelieved the accused penetrated victim). Specifically, he says that unlike *Barnard* and *Pond,* no basis exists here for "an acquittal of statutory sodomy but a finding of guilt on child molestation" because he [Defendant] consistently denied committing any offense, whereas Victim "consistently claimed that [Defendant] placed his finger inside her vagina." This argument lacks merit.

A court is not prohibited from instructing a jury on a lesser included offense when sufficient evidence exists to convict of the greater offense when, as here, the defendant does not object thereto on the basis he or she wants to pursue an "all or nothing" defense. *State v. Taylor,* 123 S.W.3d 924, 930–31 (Mo.App.2004). To illustrate why this is so, we note that the prosecutor here could have initially charged Defendant with first-degree child molestation rather than sodomy. Had Defendant been so charged, Victim's testimony, standing alone, would have been sufficient substantial evidence to support a finding that Defendant touched the genitals of Victim (a person under the age of fourteen years) and therefore, had committed the crime of child molestation. This follows because, although Victim did testify on direct examination that penetration with the finger occurred, she also testified on cross-examination that Defendant "touched my private." "A jury may accept part of a witness's testimony, but disbelieve other parts." *Pond,* 131 S.W.3d at 794[6]; *see also State v. Robinson,* 26 S.W.3d 414, 417–18 (Mo.App.2000). The jury could have chosen to believe Defendant only "touched" Victim's vagina without any penetration.

Other witnesses confirmed that Victim's allegations only included a touching of the vagina without penetration. Fickie testified that Victim said Defendant touched "around her vaginal area." An examining doctor testified that Victim told him that Defendant's "hand was on her genital area." As aptly stated by the *Pond* court, "a reasonable jury could find the prior statements more believable than those at trial." *Pond,* 131 S.W.3d at 794.

We also note that Defendant admits in his brief that there was sufficient evidence to support his conviction of the greater offense of first-degree statutory sodomy. Having admitted that, Defendant cannot show he was prejudiced by the submission of the instruction on the lesser included offense. *See State v. Ellis,* 639 S.W.2d 420, 423[5] (Mo.App.1982) (holding an accused "is not prejudiced by the submission of the lower degree of the offense, though a finely milled analysis of the evidence might lead to the conclusion that it supported the submission only of the higher degree of the offense").

In sum, there was ample affirmative evidence for the jury to find Defendant touched Victim's genital area with his hand but did not penetrate her vagina with his fingers; consequently, no error was committed, plain or otherwise, when the trial court instructed the jury on the lesser included offense of first-degree child molestation in connection with the Count II offense. Point denied.

### Point II: Defendant's Double Jeopardy Claim

In his second point, Defendant alleges "[t]he trial court plainly erred in sentencing [him] on both counts I and II, statutory rape and child molestation, because this violated [his constitutional right] to be free from double jeopardy...." Defendant says that "first degree child molestation is a lesser included offense of first-degree statutory rape, and charges were not differentiated in such a way to instruct the jury that two different offenses must have occurred to enter two verdicts, thus subjecting [Defendant] to two convictions for the same criminal conduct." As we understand it, the double jeopardy protection that Defendant claims was violated is that which protects an accused from multiple punishment for the same offense. *State v. French,* 79 S.W.3d 896, 898[1] (Mo.banc 2002); *State v. Harris,* 153 S.W.3d 4, 6 n. 2 (Mo.App.2005).

Defendant's point has two bases. First, Defendant focuses on the verdict directing instructions and the fact they did not iden-

tify the specific date of the respective offenses, that is, they only required the jury to find that the crimes were committed between January 3 and January 4, 2004.

The second prong of Defendant's argument is that the crime of first-degree child molestation is necessarily an included offense of first-degree rape. To explain, the crime of statutory rape in the first degree is defined as "sexual intercourse with another person who is less than fourteen years old." § 566.032.1. "Sexual intercourse" is defined as "any penetration, however slight, of the female sex organ by the male sex organ." § 566.010(4). The child molestation crime is defined as subjecting "another person who is less than fourteen years of age to sexual contact." § 566.067.1. "Sexual contact" is then defined, *inter alia*, as "any touching of another person with the genitals." § 566.010(3). From this it follows that proof of sexual intercourse with a female under the age of fourteen years is necessarily proof she was subjected to "sexual contact."

With the foregoing as background, Defendant's double jeopardy argument proceeds as follows:

"Here, the verdict directors for both offenses submitted identical dates, and so there is no way of assuring that the convictions are based upon different criminal conduct. *The court submitted proper instructions*, but when the jury returned a verdict of guilty of a lesser included offense of both sodomy and rape, a double jeopardy question arose.

. . . .

"The jury acquitted [Defendant] of sodomy. It found him guilty of an offense that was a lesser included offense of statutory rape. There is no basis for concluding that this conviction was for different criminal conduct, since the instructions were identical in place and time. His right to be free from double jeopardy requires reversal of his convic-

tion for child molestation." (Emphasis added.)

Clearly, the trial court submitted proper instructions. Defendant concedes as much. It is also true here that first-degree child molestation is a lesser included offense of both statutory rape and sodomy. However, Defendant's claim that the jury could have convicted him of first-degree child molestation because of evidence that supported the statutory rape charge, i.e., penis to vagina contact, and thus subjected him to double jeopardy, is definitively refuted by the record.

To start with, the verdict directing instructions kept the jury from convicting Defendant of first-degree child molestation as a lesser included offense of statutory rape. Thus, Instruction No. 7 (the sodomy verdict director) referenced Count II and hypothesized what was charged in Count II, namely that Defendant had committed statutory sodomy in the first degree *if* the jury found beyond a reasonable doubt that he had penetrated Victim's vagina with one or more fingers. Instruction No. 9 (which permitted the jury to convict of child molestation) specifically directed the jury's attention to only one charge, namely that contained in Count II where penetration of Victim's vagina by his finger was charged. Instruction No. 9 made no reference to Count I or to Instruction No. 5 (both of which dealt with the rape occurrence). Nothing in Instruction No. 9 or in any other instruction could possibly have led this jury to believe it could use the rape evidence (the vagina penetration by penis testimony) as a basis for finding sexual contact as hypothesized in Instruction No. 9. Although the occasion of each offense was not distinctly fixed in the instructions by reference to time or date, each charged conduct was sufficiently identified in the instructions as a separate offense to safeguard against any reasonably possibility

that Defendant was subjected to two convictions for the same conduct.

To accept Defendant's argument, we would have to speculate that the jury (1) ignored the Instruction No. 9 references to Count II, (2) disregarded the Instruction No. 9 directive that it was to consider child molestation if it found Defendant not guilty of "statutory sodomy," and (3) struck out on its own to convict Defendant of child molestation based on evidence of penis to vagina contact that related to the statutory rape charge. This we will not do. We presume instead that the jury properly followed the court's instructions, including Instruction No. 3 (MAI–CR3d 302.03) that told the jury it "must not single out certain instructions or disregard others." *See State v. Mickle,* 164 S.W.3d 33, 61[44] (Mo.App.2005).

Finally, our belief that no possible double jeopardy violation could have occurred here is buttressed by the fact that (1) all the evidence showed there were two separate offenses committed on two different days, (2) all the evidence showed the statutory sodomy and child molestation charges were based on hand to vagina contact, (3) the prosecutor in closing argument told the jury that the only difference between the molestation count and the sodomy count was penetration,[2] and (4) the jury's verdict that found Defendant guilty of child molestation referred to Count II.[3]

On this record, we find no actual or potential double jeopardy violation and no

error, plain or otherwise, as alleged by Defendant in Point II. Point denied.[4]

### Point III: Plain Error in the Admission of Expert Testimony?

■ Defendant's final point alleges the trial court committed plain error when it allowed Dr. Brayfield, who examined Victim after the sexual abuse, to allegedly comment on Victim's credibility. Defendant focuses on one part of Dr. Brayfield's testimony. The doctor answered affirmatively when asked, "But it's your opinion that [Victim] was sexually abused *as she reported to you,* right?" (Emphasis added.) Defendant argues that this was an impermissible comment on Victim's credibility that allegedly invaded the province of the jury because Dr. Brayfield's opinion was supposedly based solely on the statements she made to him. We find no manifest injustice or miscarriage of justice resulted from the trial court's failure to act *sua sponte* by either (a) directing the witness not to answer the question, or (b) taking action once the answer was given.

■ First, although an expert witness (such as Dr. Brayfield) should not be allowed to comment on the veracity of another witness, *Price,* 165 S.W.3d at 572[2], an expert is allowed to testify as to his or her opinion on an ultimate issue in a criminal case as long as the opinion does not state that the defendant is guilty of the crimes. *State v. Williams,* 858 S.W.2d 796, 798[9] (Mo.App.1993). Here, Dr. Brayfield never stated that Defendant was guilty of the crimes. Reading his testimo-

---

**2.** To illustrate, the prosecutor flatly stated, "if you find that there was contact *between the defendant's hand and her vagina,* then you must find that he is guilty of the lesser included offense of child molestation in the first degree...." (Emphasis added.).

**3.** Sans the caption and foreman's signature, the verdict read:

"As to Count II, we, the jury, find [Defendant] guilty of child molestation in the first degree as submitted in Instruction No. 9."

**4.** Arguably, this point is nothing more than an instructional error claim that, even under the plain error rule, was waived by counsel when he affirmatively told the trial judge that he had no objections to the instructions. *See State v. Price,* 165 S.W.3d 568, 575–76 (Mo. App.2005).

ny as a whole, Dr. Brayfield merely stated his *opinion* that Victim had been sexually abused. For instance, Dr. Brayfield testified that Victim's sexual organs were fully developed even though she was only ten years old. As such, it was not unexpected that no physical injuries resulted from the abuse that she described.

When Dr. Brayfield's testimony is read as a whole, we cannot see how his comments can be viewed as vouching for Victim's credibility. *Price*, 165 S.W.3d at 572–73. Dr. Brayfield's opinion that Victim was sexually abused, although based in part on her allegations of abuse, does not facially establish substantial grounds to believe a manifest injustice or miscarriage of justice has occurred.

Second, the prohibition against expert testimony on witness credibility is designed to prevent an investment of scientific cachet to an issue (credibility) that the jury is capable of determining without resort to expert help. *Id.* at 572[3]. The jury in this case did not give Victim's testimony undue weight as a result of Dr. Brayfield's allegedly improper comments. As an example, the jury specifically disbelieved her on at least one issue, i.e., penetration of her vagina by Defendant. *See* Point I. Stated differently, by disbelieving Victim in part, the jury showed that it carefully weighed the evidence and did not wholeheartedly accept her testimony because an expert allegedly bolstered her believability. Again, on the face of the record, we cannot see any evidence of a manifest injustice or miscarriage of justice.

Third, on cross-examination, Defendant's attorney questioned Dr. Brayfield on the "history" he took from Victim, i.e.,

the sexual abuse allegations she reported to him. Those statements were inconsistent with her at-trial testimony. Apparently, this was one defense strategy; if that history was incorrect (Victim was lying at that time), then Dr. Brayfield's opinion evidence would be worth little or nothing. Because the testimony arguably advanced one defense strategy, we can find no plain error. *State v. Collins*, 163 S.W.3d 614, 621 (Mo.App.2005).

Finally, we note that Victim's credibility was attacked throughout the trial as a matter of strategy. The jury knew of many inconsistent statements and heard of her recantation at the preliminary hearing. We fail to see how one ambiguous comment by Dr. Brayfield would suddenly cause the jury to find her testimony more believable. On the face of this record, it appears the jury properly weighed the evidence. Although Victim made numerous inconsistent statements, the jury also had to weigh the fact that Defendant exhibited inculpatory behavior after finding out that Victim disclosed the abuse and told Victim that "it wouldn't happen again." We see no facial reasons to believe the jury unduly weighed Victim's testimony due to Dr. Brayfield's comment. No manifest injustice or miscarriage of justice resulted because this comment went unchallenged. Point denied.

The judgment of convictions and sentences is affirmed.

PARRISH, J., and RAHMEYER, P.J., concur.