**STATE of Missouri, Respondent,**

v.

**Carlos LUCIO, Appellant.**

No. 28526.

Missouri Court of Appeals, Southern District, Division II.

March 11, 2008.

Jeremiah W. (Jay) Nixon, Atty. Gen., Lisa M. Kennedy, for Respondent.

Ellen H. Flottman, for Appellant.

ROBERT S. BARNEY, Presiding Judge.

Carlos Lucio ("Appellant") appeals his conviction for one count of the Class C felony of statutory sodomy in the second degree, a violation of section 566.064.[1] Following a jury trial, Appellant was sentenced to seven years in the Missouri Department of Corrections. Appellant's sole point relied on asserts the trial court plainly erred and abused its discretion in allowing improper hearsay testimony relating to statements the victim made to his mother and a police officer. We affirm the judgment of the trial court.

Appellant does not challenge the sufficiency of the evidence to support his conviction. "Viewing the evidence in the light most favorable to the jury's verdict," *State v. Cowles*, 203 S.W.3d 303, 305 (Mo.App. 2006), the record reveals that on the evening of August 6, 2005, L.S. ("Victim"), a fifteen-year-old male, attended a party at the home of his boss, Fernando Garcia ("Mr. Garcia").[2] Victim got permission from his mother, T.D. ("Mother"), to spend the night at Mr. Garcia's home as long as he attended church the following morning. At the party, Victim, an inexperienced drinker, drank "[p]robably between ten to fifteen beers, about the same amount of Smirnoff [Twisted Ice] and a shot of Jim Beam." He fell asleep on a couch in the living room.

During the night, Victim "woke up and [he] was on [his] back on the floor." When he awoke, Appellant, who was wearing "[j]ust a shirt and socks," "was over [him] sucking on [his] penis and jacking [him] off." He stated he "realized what was going on but [he] couldn't do nothing, [he] couldn't move." Victim testified he "was blacking out, waking back up and [he]

---

1. All statutory references are to RSMo 2000.

2. We have chosen to refer to the parties involved by their initials in order to protect their identity. *See* § 566.226.

remember[ed] thinking [he] [did not] know what's going on.... " He stated he remembered "a really sharp [burning] pain in [his] butt" before he blacked out on one occasion and when he woke up Appellant "was jacking [him] off with his mouth towards the end [of his penis] like waiting to catch it when [Victim] ejaculated." Victim stated he was eventually able to speak and he told Appellant to "get off" of him. Victim stated Appellant then got off of him. Victim "put [his] clothes back on" and "went to sleep on the couch." When he woke up in the morning, Appellant was lying on the couch with him. Victim then found someone to take him to church and he left the house.

Victim testified he did not tell Mother about the incident because at first he was "trying to convince [him]self ... it was just a bad dream." When Victim went to work, Mr. Garcia pulled him aside by himself and asked him "if the gay guy [had] touched [him]." At that time, Victim thought, "Oh my goodness, it really did happen."

Several days later, "nasty yellow looking stuff [began] coming out of [Victim's] penis and it burned really bad if [he] would pee. And it burnt like, it felt like [he] was peeing razorblades." Victim then told Mother he had "lied to her" about everything and he told her he had been raped. Mother took him to the hospital. At the hospital Victim was diagnosed with gonorrhea and he was given a shot of antibiotics. He related he had never been sexually active prior to the incident with Appellant and the only way he could have contracted gonorrhea was from Appellant.

Detective Sergeant Ron Thomas ("Detective Thomas"), an officer with the Special Victim's Unit, talked with Victim on August 24, 2005, at the Children's Center at which time Victim told him "he had attended a party at his boss's house and he was sexually assaulted." Victim told Detective Thomas that it was Appellant who had assaulted him and he also selected Appellant's picture from a photo array.

Detective Thomas contacted Appellant and brought him to the police station for questioning after reading him his *Miranda*[3] rights. Appellant admitted to Detective Thomas that he had been at the party at Mr. Garcia's house and he was able to identify Victim as "the white boy" who had been at the residence. He initially denied touching Victim at all, but then he admitted "he had slapped [Victim] on the rear end twice" in an effort to wake Victim up.

Lori Faskentrip ("Ms. Faskentrip"), who works for the Jasper County Health Department, testified that Appellant came to her office to be tested for sexually transmitted diseases and HIV on August 18, 2005. She testified that on his intake and "risk assessment" form Appellant indicated he regularly engages in "oral and anal" sex with men in which he participates by "both giving and receiving" and that he "sometimes" uses condoms. She related Appellant was not actually tested until August 30, 2005, and at that time he did not have penile gonorrhea.[4] He was not tested for gonorrhea of the pharynx or throat, although Appellant had reported to Ms. Faskentrip on his intake form that he had "pharyngitis, which is a[n] irritation of the

---

3. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

4. Appellant was only tested for gonorrhea of the penis even though there are several types of gonorrhea. Ms. Faskentrip testified that

"gonorrhea mainly infects the penis or vaginal canal, the anus, or the pharynx." She stated that to test for gonorrhea of the throat there is a special swab test that must be performed.

throat," which is also a symptom of pharyngeal gonorrhea. She stated gonorrhea is contracted and passed easily "through a sexual means, either anal, vaginal, or oral."

Appellant testified at trial that he is homosexual; that he has a partner with whom he lives; and that he has never had a sexually transmitted disease. He stated that on the evening in question he arrived at Mr. Garcia's home, was introduced to Victim, and he never spoke to him again for the remainder of the night. He stated that "it was already getting daylight" when he saw Victim in the living room. He stated he "hit him twice on the butt" to wake him up, but Victim did not wake up. A short time later Appellant laid down on the couch where Victim was sleeping, but he stated he did not touch him. He stated that when he woke up he was on the couch and Victim was no longer there. Appellant testified he did not rape Victim and did not see anyone else rape Victim. He stated he went to the health department to get tested for sexually transmitted diseases because he thought it would prove he did not touch Victim inappropriately.

At the close of all the evidence, the jury found Appellant guilty of statutory sodomy in the second degree. He was sentenced as stated above. This appeal followed.

In his sole point relied on, Appellant maintains the trial court "plainly erred and abused its discretion" in allowing Mother and Detective Thomas "to testify that [Victim] told them [Appellant] sexually assaulted him...." Appellant asserts this testimony violated his "rights to confrontation, due process, and a fair trial ..." in that Mother's testimony and Detective Thomas's testimony "was hearsay which improperly bolstered [Victim's] testimony."

■ In our review we initially note Appellant urges he suffered a confrontation clause violation due to the admission of the testimony at issue. Of course, Mother and Detective Thomas both testified at trial and were subject to cross-examination. Likewise, Victim testified at trial and was subject to cross-examination. "[T]he requirements of the Confrontation Clause were satisfied when [Victim] testified at trial and was subject to cross examination." *State v. Benwire*, 98 S.W.3d 618, 628 (Mo.App.2003); *see Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004).

■ We also observe that hearsay is any out-of-court statement offered to prove the truth of the matter asserted and such statements are generally inadmissible, unless they fit within certain hearsay exceptions. *State v. Tyra*, 153 S.W.3d 341, 347 (Mo.App.2005).

■ At trial Appellant made no objection to the testimony of either Mother or Detective Thomas on the basis of hearsay. Nor did Appellant include these statements as allegations of error in a motion for new trial. "[I]t is well-established law in Missouri that hearsay admitted without objection may properly be considered as evidence by the trier of fact." *State v. Goodwin*, 43 S.W.3d 805, 818 (Mo. banc 2001). "In order to properly preserve an evidentiary issue for appellate review, an objection must be made upon introduction of the evidence; that objection must be reasserted as error in a motion for new trial; and the issue must be briefed on appeal." *State v. Robinson*, 194 S.W.3d 379, 380 (Mo.App.2006). Conceding he failed to preserve this issue for appeal, Appellant requests plain error review under Rule 30.20.[5]

■ "The plain error rule should be used sparingly and [it] does not justify a

---

**5.** All rule references are to Missouri Court Rules (2007).

review of every alleged trial error that has not been properly preserved for appellate review." *State v. Carr,* 50 S.W.3d 848, 853 (Mo.App.2001) (quoting *State v. McMillin,* 783 S.W.2d 82, 98 (Mo. banc 1990)). "Relief under the rule will only be granted if ... [Appellant] can show the action of the trial court was not only erroneous, but also the error so substantially impacted his rights that manifest injustice or miscarriage of justice will inexorably result if the error is left uncorrected." *State v. Kohser,* 46 S.W.3d 108, 111 (Mo.App.2001). "Plain errors are those which are evident, obvious, and clear." *Id.*

■ "An allegedly wrongful admission of hearsay testimony does not constitute plain error if such testimony is merely cumulative to other evidence properly admitted." *Goodwin,* 43 S.W.3d at 818. We note that in *Goodwin,* the Supreme Court of Missouri cited to *State v. Dixon,* 24 S.W.3d 247, 251 (Mo.App.2000), in support of the foregoing principle of law. The facts in *Dixon* show that defendant was charged with assault in the first degree, burglary in the first degree and armed criminal action resulting from defendant having repeatedly stabbed victim with broken glass from a table as well as a knife. *Id.* at 248–49. Victim's aunt observed defendant push his way into victim's apartment; she saw defendant grab victim; and push victim "onto a glass table." *Id.* at 248. Victim's aunt did not testify at trial; however, St. Louis City Police Officer Woods testified at trial that victim's aunt had told her that as she was entering victim's house "after coming from the neighbor's house, defendant was standing by the door. [Victim's aunt] asked [defendant] to leave, but he refused. As [victim's aunt] started to enter, defendant pushed his way in. He grabbed victim, pushed her down onto the glass table and started hitting her." *Id.* at 249. Defendant

objected to the testimony as hearsay and the objection was overruled. *Id.* However, defendant failed to preserve the issue by including it in his motion for new trial. *Dixon,* 24 S.W.3d at 249. The *Dixon* court chose to "review for plain error." *Id.* at 251. The *Dixon* court then pronounced that "[a]n allegedly wrongful admission of hearsay testimony does not constitute plain error if such testimony is merely cumulative to other evidence properly admitted." *Id.* The court set out that "the testimony of Officer Woods regarding statements made to her by [victim's] aunt were cumulative to the statements made by victim at trial and do not rise to the level of plain error." *Id.*

In the instant matter, Mother's testimony as well as that of Detective Thomas was consistent with and cumulative of Victim's testimony. We decline plain error review as posited by Appellant. *Goodwin,* 43 S.W.3d at 818; *Dixon,* 24 S.W.3d at 251. Point denied.

The judgment of the trial court is affirmed.

RAHMEYER, J., and LYNCH, C.J., concur.