**STATE of Missouri, Respondent,**

v.

**Bruce Wayne PERDUE, Appellant.**

No. 29759.

Missouri Court of Appeals,
Southern District,
Division One.

Aug. 3, 2010.

Kent Denzel, Columbia, for appellant.

Chris Koster, Atty. Gen. and Jayne T. Woods, Asst. Atty. Gen., Jefferson City, for respondent.

ROBERT S. BARNEY, Presiding Judge.

Bruce Wayne Perdue ("Appellant") appeals his conviction by a jury for one count of the class B felony of child molestation in the first degree, a violation of section 566.067, for subjecting a female child, R.B. ("Victim"), "to sexual contact."[1] Appellant was sentenced by the trial court to five years in the Missouri Department of Corrections. In his two points on appeal, Appellant challenges the sufficiency of the evidence to support his conviction as well as the trial court's ruling on an evidentiary issue. We affirm the judgment and sentence of the trial court.

Viewing the evidence in the light most favorable to the jury's verdict, *State v. Tolen,* 295 S.W.3d 883, 884 (Mo.App.2009), the evidence adduced at trial showed that Appellant began dating A.R. ("Mother") in May of 2004. Mother had two daughters from a previous relationship: A.Y., who was born in October of 1993, and Victim, who was born in April of 1999. Appellant and Mother became engaged in December of 2004 and they resided in a home with Victim.[2] Appellant's brother and his wife lived nearby with their children, including their daughter E.M., who was born in September of 2000, and their daughter A.M., who was born in September of 2002.[3] E.M. would often spend the night with Victim.

One evening Mother left E.M. and Victim alone with Appellant when she went to McDonald's restaurant. Before she left, Mother gave Victim and E.M. permission to write on the bedroom door with chalk; however, when Appellant discovered what they were doing he told them to stop. When Victim tried to explain to Appellant that Mother had given them permission, Appellant pulled her pants and underwear down and stuck his finger in her vagina. Victim recounted that Appellant said to her, "I told you to stop [writing on the door]" when he had his finger inside her vagina. Victim then asked him to stop but he only removed his finger when Mother entered the room after returning home.[4] Victim immediately reported the incident to Mother. According to Victim, she thought this incident happened when she was "five or two," but she was unable to testify as to an exact date of the incident. Mother did not report this incident to authorities at that time.

In addition to her testimony about the incident in question, Victim also related that Appellant had also put his "pee-pee" or penis in her vagina, but she was unable to remember how many times that had occurred. Likewise, she testified that she had talked to Mother "a lot" about the

---

**1.** All statutory references are to RSMo 2000, unless otherwise specified.

**2.** A.Y. did not reside full-time with Mother and Appellant; however, she visited every other weekend during the summer.

**3.** E.M. is identified in the Information as "M.M." She is apparently referred to by her middle name.

**4.** E.M. testified that Appellant took the same actions against her, but that she did not see Victim being molested.

incident in question, that Mother had "been telling [her] a lot about what happened," and that she did not really remember much about the incident such that Mother "kind of told [her] what happened...."

At some point in time after the incident in question, Victim began having problems with her teeth and she began developing wart-like sores in her mouth.[5] Victim was treated for gingivitis, but by August of 2007 the growths were developing rapidly and to such an extent that oral surgery was necessary to remove them. At that time Victim was diagnosed with the sexually transmitted disease of HPV Type 6 and 7 which is also referred to commonly as genital warts. The oral surgeon treating Victim contacted the Children's Division of the Department of Social Services and an investigation was opened.

On June 13, 2008, Appellant was charged by Information with nine criminal counts. In addition to Count I upon which he was convicted, Appellant was initially charged with the following additional criminal counts: Counts II and III for the class B felony of child molestation in the first degree, violations of section 566.067, for subjecting A.Y. "to sexual contact;" Count IV for the class B felony of child molestation in the first degree, a violation of section 566.067, for subjecting A.M. "to sexual contact;" and Counts V, VI, VII, VIII and IX for the class B felony of child molestation in the first degree, violations of sec-

tion 566.067, for subjecting E.M. "to sexual contact."[6]

At trial, Mother testified that she had never contracted genital warts from Appellant despite the fact that she had engaged in sexual contact with him on numerous occasions. She indicated that Victim had genital warts and that "they're not passed to every person." Counsel for Appellant objected to this testimony and the trial court ordered Mother's comment be stricken. Then, on re-cross, Mother testified that genital warts were a sexually transmitted disease. Following a side bar with the trial court, Mother then related that "[n]ot everyone will contract [genital warts]. Some people carry it, some people will never have it." Appellant's counsel did not object to this testimony.

Appellant testified on his own behalf that he did not commit the crimes with which he was charged. He also related that he had been tested for sexually transmitted diseases on two occasions since his incarceration and "both times [the test results] c[a]me back negative."[7]

At the close of the State's evidence, the trial court granted Appellant's motion for judgment of acquittal on Counts IV, V, and IX.[8] The remaining counts were submitted to the jury. Following deliberations, the jury convicted Appellant on Count I as stated above; acquitted him of Count VIII; and was unable to reach a verdict on the remaining Counts II, III, VI and VII such

---

5. Mother testified she noticed the sores in Victim's mouth in August of 2004.

6. We note the Information in this matter states that Appellant was charged with violating section 566.068, child molestation in the second degree, as opposed to section 566.067, child molestation in the first degree. This appears to be an error on the part of the charging document as the judgment and transcript refer exclusively to child molestation in the first degree under section 566.067.

7. At the sentencing hearing it was revealed that the first test did not test for all sexually transmitted diseases and that the second test was not completed.

8. The trial court's docket entry incorrectly states that Count I was part of the judgment of acquittal. The record clearly reveals this not to be the case and that he was acquitted on Count V instead.

that the trial court declared a mistrial on those counts. As already stated, following his conviction for Count I, Appellant was sentenced by the trial court to five years imprisonment. This appeal followed.

In his first point relied on, Appellant maintains the trial court erred in denying his motion for judgment of acquittal as to Count I and in entering judgment on Count I "because the rulings violated [Appellant's] right to due process of law . . . ." He maintains there was insufficient evidence to prove his guilt beyond a reasonable doubt

> in light of [Victim's] testimony that she did not really remember what happened, and she was basing her testimony on her talks with [Mother], and [Mother] told her what happened, her testimony was so inherently incredible or self-destructive that its validity was thereby rendered doubtful and left the mind clouded with doubt.

(internal quotations omitted).

"We review the denial of a motion for acquittal to determine if the State adduced sufficient evidence to make a submissible case." *State v. Davis*, 219 S.W.3d 863, 866 (Mo.App.2007). In our review, we determine whether sufficient evidence existed from which a reasonable juror might have found the defendant guilty beyond a reasonable doubt. *Id.*; *State v. Benwire*, 98 S.W.3d 618, 623 (Mo.App.2003). "In applying this standard, the reviewing court must consider the record in the light most favorable to the verdict, taking as true the evidence and all logical inferences that support a finding of guilt and ignoring the evidence and inferences that do not support a finding of guilt." *State v. Tolen*, 295 S.W.3d 883, 886 (Mo.App.2009). "We view the evidence in the light most favorable to the verdict and defer to the jury's assessment of the credibility of witnesses."

*State v. Willis*, 239 S.W.3d 198, 199 (Mo. App.2007).

Section 566.067.1 provides: "[a] person commits the crime of child molestation in the first degree if he or she subjects another person who is less than fourteen years of age to sexual contact." Section 566.010(3) defines "sexual contact" as "any touching of another person with the genitals or any touching of the genitals or anus of another person, or the breast of a female person, or such touching through the clothing, for the purpose of arousing or gratifying sexual desire of any person . . . ."

Appellant argues that the doctrine of destructive contradictions and the corroboration rule apply to Victim's testimony because her testimony alone lacked such probative value that it "was not sufficient to support [Appellant's] conviction . . . ." Specifically he points to the following alleged contradictions: (1) that Victim testified the incident at issue was the only time "this ever happened" and then also testified that Appellant put his "pee-pee" in her vagina; and (2) that Victim admitted she spoke with Mother "a lot" about the incident, that she did not really remember the details of the incident, and that Mother "kind of told [her] what happened."

"It has long been held that " 'the uncorroborated testimony of the victim in a case of sexual assault is sufficient to sustain a conviction.' " *State v. Paulson*, 220 S.W.3d 828, 833 (Mo.App.2007) (quoting *State v. Waddell*, 164 S.W.3d 550, 553 (Mo.App.2005)). Yet, the Supreme Court of Missouri recognizes an exception to this rule referred to as the " 'destructive contradictions' doctrine. The doctrine is properly invoked only when the testimony is so inherently incredible, self-destructive or opposed to known physical facts on a vital point or element that reliance on the testimony is necessarily precluded." *State*

*v. Wright,* 998 S.W.2d 78, 81 (Mo.App. 1999) (quoting *T.L.C. v. T.L.C.,* 950 S.W.2d 293, 295 (Mo.App.1997)). "The doctrine specifically does not apply to contradictions between the victim's trial testimony and prior out-of-court statements, to contradictions as to collateral matters, or to inconsistencies not sufficient to make the testimony inherently self-destructive." *Id.* "Further, it does not apply where the inconsistencies are between the victim's statements and those of other witnesses; the latter types of inconsistencies in testimony simply create questions of credibility for jury resolution." *Id.*

Appellant asserts the doctrine of destructive contradictions applies here. We disagree. First, Victim testified that Appellant put his finger in her vagina and "that's the only time this ever happened...." This testimony then followed:

THE STATE: Did Bruce ever put his pee-pee in your pee-pee?

VICTIM: Yes.

THE STATE: Okay. So, there's another time that you think it happened, is that right?

VICTIM: Yes.

THE STATE: Do you remember which one it was, whether it was a finger or a pee-pee?

VICTIM: It was both.

THE STATE: Okay, so it was more than once? Is that right? Or do you remember?

VICTIM: I don't remember.

There is nothing contradictory about this testimony from Victim. Her statement that in addition to placing his finger in her vagina on one occasion Appellant also placed his penis inside her vagina on another occasion is related to two separate instances. There is simply no inconsistency and, thus, the doctrine of destructive contradictions does not apply.

Second, Victim's testimony that she spoke with Mother "a lot" about the incident, that she did not really remember the details of the incident, and that Mother "kind of told [her] what happened" was not contradictory testimony. It was impeachment evidence offered to undermine the veracity of Victim's testimony. As already stated, such evidence relating to the credibility of witnesses is for the jury to determine. *See Willis,* 239 S.W.3d at 199. Additionally, "[i]t is well-established that, because a young child is less skilled in articulation and can become understandably confused in a court setting, a child can contradict herself in some respects without leaving a reasonable juror unconvinced as to the veracity of her testimony." *Wright,* 998 S.W.2d at 82. "Thus, 'it is not uncommon for there to be some ... memory lapses during the testimony of a child of tender years.'" *Id.* (quoting *State v. Harvey,* 641 S.W.2d 792, 800 (Mo.App.1982)). The doctrine of destructive contradictions is inapplicable to the present matter.

■■■ The corroboration rule is likewise inapplicable. Under the corroboration rule, corroboration of a victim's testimony " 'is mandated only when the victim's testimony is so contradictory and in conflict with physical facts, surrounding circumstances and common experience, that its validity is rendered doubtful such that corroboration of the victim's testimony is required to sustain the conviction.'" *State v. Paxton,* 140 S.W.3d 226, 230 (Mo.App. 2004) (quoting *State v. Baker,* 23 S.W.3d 702, 709 (Mo.App.2000)). " 'Further, the rule is not applied merely because the testimony of the victim includes inconsistencies or contradictions as to minor points of a nonessential nature.'" *Id.* (quoting *Baker,* 23 S.W.3d at 709). " 'Conflicts of [a] nonessential nature and issues regarding the credibility of witnesses are matters for the jury to determine.'" *Id.* (quoting

*Baker,* 23 S.W.3d at 709). "The corroboration rule is only triggered when 'the victim's testimony is so contradictory or inconsistent as to deprive it of all probative force.'" *Id.* (quoting *State v. Benwire,* 98 S.W.3d 618, 623 n. 2 (Mo.App.2003)).

Having already found there were no inconsistencies or contradiction in Victim's testimony as it related to the incident at issue, there is no need to more fully examine whether application of the corroboration rule was necessary in this matter. It clearly was not. There was sufficient evidence submitted by the State to prove that Appellant was guilty of child molestation beyond a reasonable doubt. *See Wright,* 998 S.W.2d at 82. The trial court did not err in denying Appellant's motion for judgment of acquittal. Point I is denied.

 In his second point relied on, Appellant asserts the trial court erred in "failing to instruct the jury to disregard the State's improper elicitation of medical testimony from [Mother]...." Specifically, he maintains

> there was no foundation for [Mother] to testify as an expert that [Appellant] could transmit genital warts without having the disease, because her 'research' and hearsay from [Victim's] surgeon did not qualify her as an expert or give her knowledge that the jury lacked. The [trial] court's failure to instruct the jury to disregard the improper evidence, if left uncorrected, will inexorably result in a miscarriage of justice because the jury was led to convict [Appellant] because [Mother] gave the jury reason to believe her though [Appellant] did not have the [sexually transmitted disease] that the State claimed he gave to [Victim].

 It has long been held that "[a]n objection to the admission of evidence

must be made to preserve the issue for appeal." *State v. Johnson,* 284 S.W.3d 561, 582 (Mo. banc 2009). Appellant acknowledges that he failed to properly object to this evidence at trial; thus, he requests plain error review under Rule 30.20.[9]

 Plain error will only be found where the error is plain and obvious and a manifest injustice or miscarriage of justice will result from the failure to correct the alleged error. *State v. Fewell,* 198 S.W.3d 691, 693 (Mo.App.2006). "A plain error claim must establish *on its face* substantial grounds for us to believe a manifest injustice or miscarriage of justice will result if the error is left uncorrected." *Id.* "The plain error rule is to be used sparingly, and it does not provide an avenue of relief for every trial court error that has not been properly preserved." *Id.*

At trial, during the cross-examination of Mother, the following colloquy occurred:

COUNSEL FOR APPELLANT: When you and [Appellant] were living together, did the two of you have some sort of sexual relation[ship]

MOTHER: Yes.

COUNSEL FOR APPELLANT: And you've never had genital warts, have you?

MOTHER: No.

COUNSEL FOR APPELLANT: But [Victim] has them?

MOTHER: Yes. But they're not passed to every person. Not every person gets them.

COUNSEL FOR APPELLANT: And I would ask that be stricken as non responsive, your Honor.

---

9. All rule references are to Missouri Court Rules (2010).

THE COURT: Ordered stricken.

On re-cross, this exchange transpired:

COUNSEL FOR APPELLANT: The disease that your daughter has contracted, is it a sexually transmitted disease?

MOTHER: It is.

COUNSEL FOR APPELLANT: Nothing further.

THE STATE: Your Honor?

THE COURT: Yes.

THE STATE: If she can testify that it's a sexual transmitted disease, may I ask her if everyone that comes into contact gets it?

THE COURT: If she knows, and has the basis of knowing?

THE STATE: She's allowed that it's a sexually transmitted disease-

THE COURT: No, no. Let[']s not argue about this.

THE STATE: Okay.

THE COURT: I have ruled.

On re-direct, the State then made this inquiry of Mother:

THE STATE: Do you have a basis for knowing anything about how the disease that your daughter [has] is transmitted?

MR. MITCHELL: Your Honor, may we approach?

THE COURT: You may.

(WHEREUPON, the following proceedings were held at the bench, outside the hearing of the jury:)

COUNSEL FOR APPELLANT: I believe this is going to require medical testimony on how something is or is not—

THE COURT: You opened it, when you asked her what it was.

COUNSEL FOR APPELLANT: But she needs to lay a foundation.

THE COURT: Well, we'll find out what kind of foundation she lays. Okay?

COUNSEL FOR APPELLANT: All right.

THE COURT: All right.

(THEREAFTER, further proceedings were held within the hearing of the jury:)

THE STATE: Do you have any basis for that knowledge?

MOTHER: I have done research and I also know what the oral surgeons have told me. And it is sexually transmitted. She also has them in her vaginal area.

THE STATE: Do you have any basis for knowing whether or not everyone who comes [into] contact with this, I think [it is] HPV Type 6—

MOTHER: Not everyone will contract it. Some people carry it, some people will never have it.

THE STATE: Nothing else.

THE COURT: Any other questions of this witness?

COUNSEL FOR APPELLANT: No, your Honor.

THE COURT: You may step down.

■ Here, Mother testified that her information about genital warts was derived from her own research and from conversations she had with Victim's oral surgeons. Mother's testimony was clearly based on hearsay evidence. Hearsay evidence "is any out-of-court statement offered to prove the truth of the matter asserted and such statements are generally inadmissible, unless they fit within certain hearsay exceptions...." *State v. Lucio*, 247 S.W.3d 131, 134 (Mo.App.2008). " 'It is well-established law in Missouri that hearsay admitted without objection may properly be considered as evidence by the trier of fact.' " *Id.* (quoting *State v. Goodwin*, 43 S.W.3d 805, 818 (Mo. banc 2001)). Further, it has been held that "[h]earsay evidence offered without objection is not plain error." *State v. Brown*,

912 S.W.2d 643, 645 (Mo.App.1995); *see* *State v. Mayabb,* 43 S.W.3d 429, 435 (Mo. App.2001). While Appellant's counsel objected to a portion of Mother's testimony, he failed to object to the questions asked of her on re-direct by the State which elicited hearsay testimony. There was no plain error in this instance. Point II is denied.

The judgment and sentence of the trial court is affirmed.

LYNCH and BURRELL, JJ., concur.