**STATE of Missouri, Respondent,**

v.

**Thomas MCGEE, Appellant.**

No. ED 90630.

Missouri Court of Appeals,
Eastern District,
Division One.

March 24, 2009.

Motion for Rehearing and/or Transfer to Supreme Court Denied April 28, 2009.

Application for Transfer Denied
June 30, 2009.

Michael A. Gross, St. Louis, MO, for appellant.

Shaun J. Mackelprang, Assistant Attorney General, Jefferson City, MO, for respondent.

PATRICIA L. COHEN, Judge.

### Introduction

Thomas McGee ("Defendant") appeals from the judgment of the Circuit Court of the City of St. Louis, following a jury trial, convicting him of second degree robbery, kidnapping, attempted stealing over $25,000, stealing by deceit, and two counts of false impersonation of a police officer. The trial court sentenced Defendant as a prior and persistent offender to consecutive terms totaling forty-two years' imprisonment. The judgment is modified in part and affirmed as modified.

### Background

Defendant was charged by information for crimes against Marilyn Sharpe, J.B. Tidwell, and Alice Stith. At the time of the crimes, all three victims were approximately eighty-years old. The State alleged that while posing as a police officer Defendant stole money from Ms. Sharpe and Ms. Stith, kidnapped and robbed Ms. Sharpe, and attempted to steal over $25,000 from Mr. Tidwell. The State also charged Mr. Andrea Wilks as Defendant's accomplice in committing the offenses against Ms. Sharpe and Mr. Tidwell. Beginning on August 24, 2007, Defendant and Mr. Wilks were tried together by jury. The evidence at trial viewed in the light most favorable to the State revealed the following:

*A. Ms. Sharpe—Robbery, Kidnapping, & False Impersonation of a Police Officer*

On October 8, 2003, as Ms. Sharpe was driving to the grocery store, two men approached and stopped her vehicle. The heavier man knocked on the driver's side

window, displayed a badge, and indicated that he was an off-duty police officer. The heavier man then entered the vehicle on the front passenger side, and the other man entered the vehicle from the back seat. Ms. Sharpe later identified the heavier man as Defendant and the other man as co-defendant Wilks.

After assuming control of the car, the men told Ms. Sharpe to drive to the Bank of America on Lindell to withdraw money from her bank account. Upon arriving at the Bank of America, Mr. Wilks placed a "pen" on Ms. Sharpe's shirt and explained that it would monitor her conversation while inside bank. Then, Ms. Sharpe and Defendant exited the vehicle and walked towards the bank. Defendant instructed Ms. Sharpe to withdraw $9,000 and not to converse with the tellers. Defendant waited while Ms. Sharpe went in the bank and obtained a cashier's check for $9,000. Surveillance footage from the Bank of America at Lindell showed Ms. Sharpe inside the bank, making a transaction, and wearing the "pen" that had been placed on her to monitor her conversations.

When Defendant and Ms. Sharpe returned to the vehicle, Defendant took over driving and drove to a number of other banks. Surveillance footage from the Bank of America located in downtown St. Louis showed Ms. Sharpe inside the bank. Defendant was also seen inside the bank as he stood by the front doors while Ms. Sharpe cashed the $9,000 cashier's check she received at the first bank. Later that day, surveillance footage showed Ms. Sharpe at the Bank of America on Brentwood where she withdrew $500 cash. Finally, surveillance footage showed Ms. Sharpe making a transaction at the Bank of America in Warson Woods where she withdrew $5,000. Ms. Sharpe gave the money she withdrew from the several banks to Defendant.

At some point, Ms. Sharpe noticed that Mr. Wilks was no longer in the vehicle with her and Defendant. Later she observed Mr. Wilks driving behind them in a different car. While Mr. Wilks was following them, Ms. Sharpe saw that Defendant maintained contact with Mr. Wilks using a "radio or telephone" device. During Defendant and Mr. Wilks' conversation, Ms. Sharpe overheard Defendant mention the name "Callahan."

Throughout the encounter, Defendant did not explicitly threaten Ms. Sharpe and Ms. Sharpe never actually saw a weapon. However, while traveling to the several banks, Defendant drove with his right hand and kept his left hand in his pocket which led Ms. Sharpe to believe that he possessed a weapon. Additionally, when warning Ms. Sharpe not to make any conversation with the tellers at the bank, Defendant indicated that she needed to "keep quiet because something would happen . . . to [her] family or whatever."

At various times throughout the day, Ms. Sharpe told Defendant that she was hungry, but Defendant did not give her anything to eat. Ms. Sharpe also told Defendant on three or four occasions that she wanted to go home, to which Defendant replied that they "would go home later."

Finally, after Ms. Sharpe made her last transaction at the Warson Woods Bank of America, Defendant drove Ms. Sharpe to a location in downtown St. Louis where Defendant exited the vehicle and ran to the car that had previously been following them. Subsequently, Ms. Sharpe used a passerby's cellular phone to call the police. Soon thereafter, Detective Michael Regan arrived and interviewed Ms. Sharpe. Ms. Sharpe described the events of the day to Detective Regan, and based upon that information, Detective Regan began his investigation. Detective Regan seized the

"microphone pen" that had been placed on Ms. Sharpe, and he reviewed the surveillance footage and business records from the banks Ms. Sharpe had visited. Because part of the robbery occurred outside of his jurisdiction, Detective Regan contacted Detective James Simpson from the Brentwood Police Department who later interviewed Ms. Sharpe and assisted in the investigation.

### B. Mr. Tidwell—Attempted Stealing Over $25,000

About one and a half years later, on April 5, 2005, Mr. Tidwell reported to the police that two men posing as police officers were attempting to steal money from him. Detective Thomas Neske responded and Mr. Tidwell informed him that two men had visited his house that morning, displayed badges, and identified themselves as "Callahan" and "Stone." Mr. Tidwell said that the men asked him "[t]o obtain money from his personal checking account and hand it over to them." Mr. Tidwell also indicated that the men were going to contact him by phone that evening, and, subsequently, Detective Neske arranged to have a recording device placed on Mr. Tidwell's telephone. That night, a man identifying himself as "Sergeant Stone" called and instructed Mr. Tidwell to go to his bank in the morning, withdraw $9,000 in cash, and obtain two cashier's checks for $9,000 apiece.

The next day, Detective Neske staked out Mr. Tidwell's bank and arrested Defendant and Mr. Wilks in the parking lot of a service station nearby. When searching Defendant, Detective Neske discovered a piece of paper in Defendant's shirt pocket with Mr. Tidwell's name, address, and telephone number written on it. In Defendant's suit coat pocket, Detective Neske retrieved a leather badge case containing a photo identification card and a gold badge with the inscription "Special Police." De-

fendant's photograph was on the identification card, which indicated that the badge belonged to "Lieutenant Richard Callahan." Also in Defendant's possession was $2,050 in cash and a Tennessee driver's license issued in Defendant's name. On Mr. Wilks, the police seized a pair of handcuffs, a "Private Investigator" badge, $1,596 in cash, and a Tennessee driver's license issued in Mr. Wilk's name. In the car occupied by Defendant and Mr. Wilks, the police found a receipt for the Travelodge motel with Mr. Tidwell's name and partial address written on it, a two-way personal radio, and, Tennessee license plates.

Following the arrest, Detective Neske entered Defendant's and Mr. Wilks' information, along with information regarding the encounter with Mr. Tidwell, into the Missouri Uniform Law Enforcement System ("MULES"), a computer system that asks other police departments whether incidents have been reported that involve persons matching the same description. Detective Regan, who had access to MULES, read Detective Neske's message and noticed that the crime against Mr. Tidwell was similar to the crime perpetrated against Ms. Sharpe. Specifically, he noticed that the suspects were two men who had instructed an elderly victim to withdraw large sums of money from a bank and that one of the perpetrators possessed a badge and ID with the name "Callahan." Detective Regan remembered that, in 2003, Ms. Sharpe told him that the heavier man in the front seat "showed her a badge," and she "remembered seeing the name Callahan on it."

Subsequently, on April 20, 2005, Detective Regan visited Ms. Sharpe at her home and showed her two photographic lineups, one containing Defendant's photograph and one containing co-defendant Wilks' photograph. Ms. Sharpe identified Defen-

dant as the heavier man who drove her to the several banks and recognized Mr. Wilks as the man who had been in the back seat at the beginning of the encounter.

### C. Ms. Stith—Stealing By Deceit & False Impersonation of a Police Officer

On November 23, 2005, two men came to Ms. Stith's apartment complex and rang her intercom. Ms. Stith answered and one of the men identified himself as "Sergeant James" and explained that he wanted to talk about certain fraudulent $20 checks Ms. Stith had cashed. Once inside her apartment, the man told Ms. Stith that he and his partner were investigating counterfeit money and that they needed her to withdraw money from her bank account so they could compare serial numbers. Believing that she was assisting the police, Ms. Stith complied and went with the men to two banks where she withdrew $1,900 from one bank and $5,150 from the other. Ms. Stith gave the money she had withdrawn to the first man, and the two men then drove Ms. Stith home.

In December 2005, Ms. Stith went to the police to report the incident. Later, Ms. Stith identified Defendant in bank surveillance videos, a photographic lineup, and a live lineup as the man who identified himself as "Sergeant James." Ms. Stith again identified Defendant at trial as the man who posed as a police officer and took her money.

### D. Trial

At trial, only Ms. Stith was available to testify in court. Ms. Sharpe was hospitalized at the time of the trial and the State introduced a videotaped deposition taken on August 17, 2006 in lieu of her live testimony. The State also called Detective Regan and Detective Simpson to testify about their investigation of Ms. Sharpe's robbery. Mr. Tidwell died in a car acci-

dent prior to trial and the State's primary witness for the charges involving him was Detective Neske. The defense presented no evidence.

At the close of the evidence, the jury found Defendant guilty on all counts. Specifically, with regard to Ms. Sharpe, the jury found Defendant guilty of second degree robbery, kidnapping, and false impersonation of a police officer; with regard to Mr. Tidwell, the jury found Defendant guilty of attempted stealing over $25,000; and, with regard to Ms. Stith, the jury found Defendant guilty of stealing by deceit and false impersonation of a police officer. The trial court also submitted four counts against co-defendant Wilks for the crimes against Ms. Sharpe and Mr. Tidwell, but the jury found Mr. Wilks not guilty on all counts.

On November 30, 2007, after determining that Defendant was a prior and persistent offender, the trial court sentenced Defendant to consecutive terms of: (1) fifteen years for second degree robbery, (2) fifteen years for kidnapping, (3) one year for false impersonation, (4) five years for attempted stealing over $25,000, (5) five years for stealing by deceit, and (6) one year for false impersonation. This appeal follows.

### Discussion

Defendant raises eleven points on appeal. Specifically, Defendant claims that trial court erred by: (1) permitting the prosecution to reference Defendant's other names during *voir dire*, (2) overruling his motion for mistrial and permitting Detective Neske to testify to inadmissible hearsay, (3) permitting police officers to testify to inadmissible hearsay, (4) accepting the jury's guilty verdict because the State presented insufficient evidence to prove the attempted stealing charge, (5) accepting the jury's guilty verdict because the State

presented insufficient evidence to prove the second degree robbery charge, (6) finding Ms. Sharpe "unavailable" because the State presented insufficient evidence to prove that Ms. Sharpe was unavailable to testify at court due to sickness or infirmity, (7) accepting the jury's verdicts because the verdicts were inconsistent in that they acquitted Mr. Wilks while convicting Defendant, (8) accepting the jury's verdicts because the verdicts were inconsistent in that the jury found that Defendant both robbed Ms. Sharpe and obtained her money by impersonating a police officer, (9) finding Defendant to be a prior offender because the State presented insufficient evidence to prove Defendant's prior felony, (10) finding Defendant to be a persistent offender because the State presented insufficient evidence to prove Defendant's two prior felonies in that the trial court failed to comply with the procedural requirements provided by Mo.Rev.Stat. § 558.021. (2000), and (11) entering a written judgment that materially differed from its oral pronouncement of Defendant's sentence for the stealing by deceit charge.[1] We address these points in turn.

*A. Voir Dire*

■ In Point I, Defendant claims that the trial court erred by allowing the prosecutor to improperly reference Defendant's aliases during *voir dire* and by not declaring a mistrial. The prosecutor inquired whether the venire knew Defendant and added that Defendant was also known as "Thomas Charles McGee, Charles Suggs, Samuel Winston, Anthony Wilson, Anthony Brown, Isaiah Brown." Defense counsel immediately objected and moved for a mistrial on the grounds that the prosecutor's reference to Defendant's alleged aliases implied that Defendant was a ca-

reer criminal and was irrelevant because Defendant did not use any of the aliases mentioned when allegedly committing the charged offenses. The trial court overruled Defendant's objection and permitted the prosecutor to ask the following question: "I wanted to probe whether you might know him by a different name. Among those names is Anthony Brown, Isiah Brwon, Thomas Cole, Richard Gains, David Leon Ward, Vernel Wilson, John Hacket, Robert Holland Mason. Does anyone recognize those names?"

■ "The essential purpose of *voir dire* is to provide for the selection of a fair and impartial jury through questions which permit the intelligent development of facts which may form the basis of challenges for cause, and to learn such facts as might be useful in intelligently executing peremptory challenges." *Grab ex rel. Grab v. Dillon,* 103 S.W.3d 228, 240 (Mo. App. E.D.2003) (quotations omitted). A trial court's ruling on the propriety of specific questions and conduct at *voir dire* is reviewed for abuse of discretion. *State v. Edwards,* 116 S.W.3d 511, 529 (Mo. banc 2003). Where an abuse of discretion has occurred, a new trial is warranted only if the defendant demonstrates a "real probability" that he or she was prejudiced by the abuse. *Id.* (quoting *State v. Betts,* 646 S.W.2d 94, 98 (Mo. banc 1983)).

Claiming that he was prejudiced by the prosecutor's comments, Defendant emphasizes the dangers associated with the use of a defendant's "aliases" in front of the jury. Defendant relies on *State v. Varner,* where our Supreme Court noted that the reference to "an 'alias,' the word, normally carries an unfavorable connotation and its improper or unfair use *may* necessitate

---

1. For convenience and continuity, Defendant's points on appeal have been rearranged

to mirror the order of events at trial.

the granting of a new trial." 329 S.W.2d 623, 626 (Mo.1959) (emphasis added). Subsequent to *Varner*, Missouri courts have clarified that "[a] showing that an accused person used an alias is not per se prejudicial, and where a reference to an alias creeps into the proceedings, the situation on appeal will be controlled by a concrete appraisal of the significance of the incident in relation to the processes of the trial as a whole." *State v. Finley*, 588 S.W.2d 229, 231 (Mo.App. W.D.1979) (citing *State v. Loston*, 234 S.W.2d 535, 540 (Mo.1950)); *see also Varner*, 329 S.W.2d at 626–27 (holding that despite the reference to the defendant's alias in the information, "in the circumstances of this record the [defendant] was not unfairly or improperly prejudiced[.]").

Even assuming, as Defendant does, that the trial court abused its discretion by allowing the prosecution to reference Defendant's aliases at *voir dire*, a thorough appraisal of the whole record reveals that no prejudice resulted. First, the prosecutor's reference to Defendant's aliases served a proper purpose by identifying jurors who either may have been or knew someone previously victimized by Defendant. *See State v. Young*, 844 S.W.2d 541, 546 (Mo.App. E.D.1992). Outside the presence of the jury, the prosecutor explained to the court that the aliases were obtained through Defendant's arrest records, and that Defendant had a long history of criminal conduct and came "through St. Louis all the time." The trial court expressed its concern that, due to the nature of the charges, there was an increased risk of undisclosed victims. To identify potential jurors acquainted with Defendant through a different name, the trial court reasonably exercised its discretion by allowing the prosecutor to reference Defendant's other names at *voir dire*.

Second, the prosecutor never used the word "alias" during *voir dire* or at trial. *See, e.g., id.* While this alone does not preclude a finding of prejudice, it does mitigate the harm alluded to in *Varner* where the Court recognized the "unfavorable connotation" associated with "the use of 'alias,' *the word* [.]" 329 S.W.2d at 626 (emphasis added).

Finally, the record shows that all venirepersons expressing prejudice or bias caused by the prosecutor's use of Defendant's aliases were removed from the case. During the defense's *voir dire*, counsel probed whether any jurors drew adverse inferences against Defendant from the prosecutor's comments. Ultimately, four potential jurors indicated that Defendant's use of aliases made them believe Defendant was guilty of the crimes charged, and those jurors were subsequently removed. Importantly, the remainder of the venire, after being expressly asked, affirmed that they could set aside the names listed by the prosecutor and only consider the evidence introduced at trial when determining Defendant's guilt. *See State v. Cornett*, 381 S.W.2d 878, 883 (Mo. banc 1964) (noting that a potential juror who has formed an opinion about the case should be dismissed "unless subsequent examination discloses unequivocally that he will be guided sole[l]y by the evidence.").

Given the record before us, we find that the trial court did not abuse its discretion by allowing the State to reference Defendant's aliases. Moreover, even assuming, *arguendo*, that the prosecutor's reference to Defendant's aliases was improper, Defendant is not entitled to a new trial because he has failed to demonstrate that the prosecution's comments resulted in a "real probability" he was prejudiced. Point denied.

*B. Mr. Tidwell's Out–of–Court Statements Admitted Through Detective Neske*

In Point II, Defendant argues that the trial court erred in permitting Detective Neske to testify to Mr. Tidwell's out-of-court statements because the testimony constituted inadmissible hearsay and violated his rights under the Sixth Amendment's Confrontation Clause.[2] Specifically, Defendant contends that the trial court erred when admitting, over his objection, Detective Neske's testimony concerning Mr. Tidwell's statements that two men with police badges identified themselves as police officers named "Stone" and "Callahan" and that the men asked Mr. Tidwell "[t]o obtain money from his personal checking account and hand it over to them."

 A trial court is vested with broad discretion in determining whether to exclude or admit evidence at trial. *State v. Forrest,* 183 S.W.3d 218, 223 (Mo. banc 2006). "An abuse of discretion is found when the decision to admit or exclude the challenged evidence is clearly against the logic of the circumstances and is so unreasonable as to indicate a lack of careful consideration." *State v. Barriner,* 210 S.W.3d 285, 296 (Mo.App. W.D.2006). Upon finding an abuse of discretion, this court will reverse only if the prejudice resulting from the improper admission of evidence is outcome-determinative. *State v. Barriner,* 34 S.W.3d 139, 150 (Mo. banc 2000). Conversely, we review challenges as to whether admitted evidence violates a defendant's rights under the Confrontation Clause *de novo. Justus,* 205 S.W.3d at 878. Properly preserved Confrontation Clause violations are presumed prejudicial. *Id.* at 881.

Initially, we note that because Mr. Tidwell died in an automobile accident and was unable to testify at trial, if his out-of-court statements were admitted for the truth of the matter asserted, they would constitute inadmissible hearsay. *See State v. Edwards,* 116 S.W.3d 511, 532 (Mo. banc 2003). Additionally, the admission of Mr. Tidwell's unconfronted statements for their truth would also violate Defendant's rights under the Confrontation Clause. *Id.*[3]

 The trial court, however, did not permit Detective Neske to testify to Mr. Tidwell's out-of-court statements for their truth, but rather admitted the statements for the limited purpose of explaining Detective Neske's subsequent conduct. "An out-of-court statement offered not for the truth of the matter asserted, but to explain subsequent police conduct, is not hearsay and is, therefore, admissible, assuming it is relevant." *State v. Simmons,* 233 S.W.3d 235, 238 (Mo.App. E.D.2007) (quotation omitted). "Under this rule the triers of fact can be provided a portrayal of the events in question, more likely to serve the ends of justice in that the jury is not called upon to speculate on the cause or reasons for the officers' subsequent activities." *State v. Brooks,* 618 S.W.2d 22, 25 (Mo.

---

2. " 'The confrontation rights protected by the Missouri Constitution are the same as those protected by the Sixth Amendment of the United States Constitution.' " *State v. Justus,* 205 S.W.3d 872, 878 (Mo. banc 2006) (quotation omitted).

3. *See Crawford v. Washington,* 541 U.S. 36, 53–54, 124 S.Ct. 1354, 1365, 158 L.Ed.2d 177 (2004) (Confrontation Clause prohibits the "admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination."); *Davis v. Washington,* 547 U.S. 813, 822, 126 S.Ct. 2266, 2273–2274, 165 L.Ed.2d 224 (2006) (Unconfronted statements "are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution.").

banc 1981). Moreover, the use of an unavailable witness's testimonial statements for non-hearsay purposes, such as explaining a police officer's subsequent conduct, is not precluded by the Confrontation Clause. *Crawford*, 541 U.S. at 59 n. 9, 124 S.Ct. 1354. ("The [Confrontation] Clause [ ] does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted.").

■■■ While Defendant acknowledges that police officers may offer out-of-court statements in order to explain their subsequent conduct, he argues that Detective Neske's testimony should not have been admitted because it directly linked him to the crime. Missouri courts have cautioned that out-of-court statements connecting the defendant directly to the crime may constitute inadmissible hearsay requiring a new trial. *See, e.g., State v. Hoover*, 220 S.W.3d 395, 401–08 (Mo.App. E.D.2007); *State v. Shigemura*, 680 S.W.2d 256, 257–58 (Mo.App. E.D.1984). The underlying concern in these cases derives from the fact that the subsequent conduct exception to the hearsay rule is "susceptible to abuse" and "'[a]llowing agents to narrate the course of their investigations, and thus spread before juries damning information that is not subject to cross-examination, would go far toward abrogating the defendant's rights under the Sixth Amendment and the hearsay rule.'" *Hoover*, 220 S.W.3d at 407 (quoting *State v. Garrett*, 139 S.W.3d 577, 582 (Mo.App. S.D.2004); *U.S. v. Silva*, 380 F.3d 1018, 1020 (7th Cir.2004)). To prevent this type of abuse, out-of-court-statements that implicate the defendant in the crime are admissible only to the extent they are necessary to explain the subsequent police conduct testified to at trial. *See State v. Murray*, 744 S.W.2d 762, 773 (Mo. banc 1988).[4]

Here, Detective Neske testified that Mr. Tidwell informed him that two men claiming to be police officers and identifying themselves as "Stone" and "Callahan" were attempting to steal money from him. Detective Neske added that Mr. Tidwell said the men wanted him to withdraw money from his bank account and they would contact him that evening. Detective Neske noted that based upon Mr. Tidwell's statements he arranged to have a recording device placed on Mr. Tidwell's telephone. Later, the men called Mr. Tidwell, and the caller, who identified himself as "Sergeant Stone," instructed Mr. Tidwell to arrive at his bank the next morning around 9:15 a.m. and to withdraw $9,000 in cash and obtain two $9,000 cashier's checks. Ultimately, "Sergeant Stone's" telephone conversation, which corroborated Mr. Tidwell's previous statement, led Detective Neske to stake out Mr. Tidwell's bank where he arrested Defendant. Clearly, Detective Neske's testimony regarding Mr. Tidwell's statements was limited to providing the background and context necessary to explain the resulting investigation.

■■■ To the extent that Defendant claims that he was prejudiced by Mr. Tidwell's statement regarding the use of the name "Callahan," Defendant failed to request the trial court to strike that portion

4. *see also State v. Howard*, 913 S.W.2d 68, 70 (Mo.App. E.D.1995) (concluding that evidence of a confidential informant's out-of-court statements directly identifying the defendant as the person selling cocaine was admissible when used for "non-hearsay purposes to show why an investigation focused on a defendant."); *State v. Brooks*, 618 S.W.2d 22, 24– 25 (Mo. banc 1981) (holding that prosecutor's statement in oral argument that confidential informants had told police officers that the defendant had been selling narcotics out of his house was permissible because evidence of that fact would be "arguably admissible" at trial to explain the police officer's surveillance of the defendant's house).

of Detective Neske's testimony and to instruct the jury to disregard it. "When evidence is relevant but parts of it are claimed to be prejudicial, the attorney objecting has a duty to ask the court for specific relief from the prejudicial portion of the evidence[,]" and "[f]ailure to do so precludes appellate review." *State v. Dunn*, 817 S.W.2d 241, 243 (Mo. banc 1991). Accordingly, any specific claim of prejudice arising from Mr. Tidwell's statement with respect to the name "Callahan" was not properly preserved for appeal. *See id.* Point denied.

### C. Ms. Sharpe's Out–of–Court Statements Admitted Through Police Officers

■■■■ In Point III, Defendant claims that the trial court erred in permitting police officers to testify to Ms. Sharpe's out-of-court statements because the testimony constituted inadmissible hearsay.[5] At trial, police officers testified about the crimes against Ms. Sharpe recounting many of the statements Ms. Sharpe made to them about her encounter with Defendant. Because Ms. Sharpe was unavailable to testify at trial, her testimony was introduced through her videotaped deposition at which all parties were present and had an opportunity to cross-examine Ms. Sharpe. Defendant claims that the police officers' testimony of the following out-of-court statements were improperly admitted to bolster Ms. Sharpe's deposition testimony and "suppl[y] critical details linking [Defendant] to the crimes": (1) Ms. Sharpe said that she cashed the $9,000 cashier's check obtained at the Bank of America on Lindell, (2) Ms. Sharpe, after viewing a photo lineup in April 2005, identified Defendant as the "heavier" man who

drove her car to the several banks and took her money, (3) Ms. Sharpe told the detectives that Defendant "showed a badge that said Callahan on it," (4) Ms. Sharpe said that Defendant "grabbed" the money she withdrew from the several banks, (5) Ms. Sharpe noticed that Defendant "had his hand inside his pocket and kind of motioned like he had some type of weapon in his pocket," and (6) Ms. Sharpe said that Defendant drove while "speaking on his cell phone and referring to the person on the other end ... as his commander."

■■■ Defendant concedes that he failed to object to the detective's testimony at trial or include the challenged statements in his motion for a new trial. Accordingly, the alleged error is not preserved for appeal and our review is limited to plain error. *State v. Lucio*, 247 S.W.3d 131, 134 (Mo.App. S.D.2008). To obtain relief under the plain error rule, a defendant must show not only that the trial court erred, " 'but also [that] the error so substantially impacted his rights that manifest injustice or miscarriage of justice will inexorably result if the error is left uncorrected.' " *Id.* (quotation omitted). " 'Plain errors are those which are evident, obvious, and clear.' " *Id.* (quotation omitted).

"An allegedly wrongful admission of hearsay testimony does not constitute plain error if such testimony is merely cumulative to other evidence properly admitted." *State v. Goodwin*, 43 S.W.3d 805, 818 (Mo. banc 2001). Here, all of the out-of-court statements challenged by Defendant were cumulative of other properly admitted evidence. First, the fact that Ms. Sharpe cashed the $9,000 cashier's

---

**5.** In his point on appeal, Defendant also claims that the trial court erred by not declaring a mistrial after the police officers testified, without objection, to Ms. Sharpe's out-of-court statements. Because Defendant does not develop this point in the argument section of his brief, the point is abandoned. *State v. Wright*, 934 S.W.2d 575, 582 (Mo.App. S.D. 1996).

check was independently proved through other evidence including the cashier's check signed by Ms. Sharpe and Ms. Sharpe's withdrawal slip for $9,000, as well as police officer testimony that review of the bank records revealed that Ms. Sharpe received $9,000 cash at the downtown Bank of America.

Second, because one of the officers testified that he personally witnessed the identification procedure at the 2005 photo lineup, his testimony that Ms. Sharpe identified Defendant was independently admissible to prove that Ms. Sharpe did in fact identify Defendant at the photo lineup. *See Olds v. State,* 891 S.W.2d 486, 489 (Mo.App. E.D.1994). Consequently, testimony to the same effect was cumulative.

Finally, the remainder of the challenged statements were consistent with, and cumulative of, Ms. Sharpe's deposition testimony, in which she testified that: (1) Defendant "had a badge that he showed as a policeman" and at one point mentioned the name "Callahan," (2) she "g[a]ve [the] money to one of the men," (3) Defendant "kept his hand in his pocket" which led Ms. Sharpe to believe "it might have been a weapon," and (4) Defendant and the other man "were communicating together [by radio or telephone] on what was going on and everything." Point denied.

*D. Sufficiency of the Evidence to Support Finding of Attempted Stealing Over $25,000*

■ In Point IV, Defendant claims that the trial court erred by accepting the jury's guilty verdict on Count IV because the State failed to present sufficient evidence to prove that he attempted to steal over $25,000 from Mr. Tidwell. Specifically, Defendant argues that Detective Neske's testimony regarding Mr. Tidwell's out-of-court statements that a person impersonating a police officer and identifying himself as "Callahan" was trying to steal

his money was the only evidence showing that he (1) attempted to steal $25,000 and (2) represented himself as a police officer. Because Defendant failed to raise his allegation of insufficient evidence in his motion for judgment of acquittal or his motion for a new trial, the issue is not properly preserved for appeal and we review only for plain error. *State v. Nunley,* 992 S.W.2d 892, 894–95 (Mo.App. S.D.1999).

In assessing the sufficiency of the evidence, our review is "limited to a determination of whether the record contains sufficient evidence from which a reasonable juror could find the defendant guilty beyond a reasonable doubt." *State v. Lybarger,* 165 S.W.3d 180, 186 (Mo.App. W.D. 2005). We view all the evidence and all reasonable inferences drawn therefrom in the light most favorable to the State, and disregard all evidence and inferences to the contrary. *State v. Whalen,* 49 S.W.3d 181, 184 (Mo. banc 2001). We afford circumstantial evidence the same weight as direct evidence. *State v. Brooks,* 158 S.W.3d 841, 847 (Mo.App. E.D.2005) (citing *State v. Hutchison,* 957 S.W.2d 757, 767 (Mo. banc 1997)).

■ To convict Defendant of attempted stealing over $25,000, the verdict director required the jury to find, among other things, that Defendant "represented himself as a police officer and instructed J.B. Tidwell to withdraw U.S. currency from his bank account." Excluding Mr. Tidwell's out-of-court statements, the evidence at trial showed that a man identifying himself as "Sergeant Stone" called Mr. Tidwell and said, "[w]ell, I was just trying to confirm, and wanted my captain to know everything was still up" for the "operation." After Mr. Tidwell confirmed that everything was "still up", "Sergeant Stone" explained that instead of leaving at 9:00, he wanted Mr. Tidwell to leave for

his bank at "like 9:15" to allow "our officers time for the bank to open up and we can set up our surveillance and stuff." "Sergeant Stone" then asked if Mr. Tidwell wanted to speak with his "Lieutenant," and Mr. Tidwell replied that it was not necessary. Before hanging up, Sergeant Stone reminded Mr. Tidwell that he needed to "get the $9,000 ... cash ... [a]nd two $9,000 cashier's checks," and if the tellers ask any questions, tell them "you're going to get your house fixed...." The next day, the police officers arrested Defendant and co-defendant Wilks in the parking lot of a service station near Mr. Tidwell's bank. After searching Defendant, the officers found Mr. Tidwell's name, address, and telephone number written on a piece of paper and a fake police badge with his picture and the name "Lieutenant Callahan" on it.

This evidence was sufficient for a reasonable juror to conclude that Defendant instructed Mr. Tidwell to obtain money from his bank account and that Defendant represented himself as a police officer. A reasonable jury could infer that "Sergeant Stone" and his "Lieutenant" had previously met with Mr. Tidwell, represented themselves as police officers, and instructed Mr. Tidwell to withdraw $27,000 for their undercover "operation." In addition, because Defendant was later arrested near Mr. Tidwell's bank with the man later identified as "Sergeant Stone" while possessing Mr. Tidwell's address and telephone number as well as a fake police badge with the name "Lieutenant Callahan," jurors could also infer that Defendant was the "Lieutenant" who previously instructed Mr. Tidwell to withdraw U.S. currency from his bank account. Point denied.

## E. Sufficiency of the Evidence to Support Finding of Second Degree Robbery

In Point V, Defendant claims that the trial court erred by accepting the jury's guilty verdict on Count I because the State failed to present sufficient evidence to prove that he committed second degree robbery. Specifically, Defendant argues that the evidence was insufficient to prove that he (1) "threatened the immediate use of physical force on or against Ms. Sharpe," or (2) took "U.S. currency" belonging to Ms. Sharpe. Because Defendant's allegation was not properly raised in his motion for a new trial, we again review only for plain error. *Nunley*, 992 S.W.2d at 894–95.

█ First, Defendant argues that the evidence was insufficient to support the jury's finding that he "threatened the immediate use of physical force" against Ms. Sharpe because there was no specific showing that he was armed or that he affirmatively threatened Ms. Sharpe personally.[6] We disagree. Missouri courts have routinely observed that "the force necessary to constitute robbery may be constructive as well as actual, and may consist in the intimidation of the victim, or putting him in fear." *State v. Talkington*, 858 S.W.2d 802, 805 (Mo.App. S.D.1993) (quotation omitted). Particularly, "[t]hreatened physical force may be implied when the defendant engages in behavior that suggests he has a weapon, or from the use of fear-invoking phrases such as 'This is a holdup.'" *Lybarger*, 165 S.W.3d at 187. Ms. Sharpe testified that Defendant kept his hand in his pocket while driving and appeared to possess a weapon. She also testified that Defendant made threats indicating that "something

6. *See* Mo.Rev.Stat. § 569.010(1) (2000) (defining "forcibly steals" in the context of second degree robbery as when a person "in the course of stealing ... uses or threatens the immediate use of physical force upon another person ...").

would happen to her family" if she did not comply with his instructions and that she was "[w]orried to death." This testimony was sufficient probative evidence of intimidation and fear to support the jury's finding that Defendant threatened immediate force upon Ms. Sharpe. *See, e.g., State v. Duggar*, 710 S.W.2d 921, 922 (Mo.App. S.D.1986) (upholding jury's robbery conviction where evidence showed that "defendant did not offer physical violence, did not display any weapon and made no threats ... [and the victim] testified that he 'felt threatened.' ").

■■ Second, Defendant argues that Ms. Sharpe's deposition testimony was insufficient to support a finding that he "took U.S. currency" from her. Particularly, Defendant claims that Ms. Sharpe testified only that she "gave" money to "one of the men" and that the only transaction she recalled performing at the direction of the "heavier" man was at the first bank where she obtained the $9,000 cashier's check.[7] However, Ms. Sharpe also testified that, after the first bank on Lindell, she "went to different banks," "withdr[e]w money at all these banks," and "gave this money to one of the men." Additionally, according to Ms. Sharpe's testimony, the "thinner" man exited the car at some point leaving only the "heavier" man, who she later identified as Defendant, driving Ms. Sharpe to the other banks. As Defendant was the only person with Ms. Sharpe throughout the entire incident, a reasonable jury could infer that Ms. Sharpe gave the money—*i.e.*, "U.S. currency"—she withdrew from the subsequent banks to Defendant.

■■ Finally, Defendant contends that destructive contradictions in Ms. Sharpe's testimony regarding the identity of the "heavier" man rendered her testimony unreliable to prove that Defendant was, in fact, the "heavier" man. "The doctrine of 'destructive contradictions' provides that a witness's testimony loses probative value when his or her statements at trial are so inconsistent, contradictory and diametrically opposed to one another that they rob the testimony of all probative force." *State v. Fears*, 217 S.W.3d 323, 328 (Mo.App. S.D.2007). The doctrine, however, is not invoked by "mere discrepancies or conflicts in the witness's trial testimony", and such inconsistencies in testimony simply create "questions for jury resolution." *Id.* (quotation omitted). Rather, "[t]he doctrine is properly invoked only when the testimony is so 'inherently incredible, self-destructive or opposed to known physical facts' on a vital point or element that reliance on the testimony is necessarily precluded." *Id.* at 328–29 (quotation omitted).

Regarding the identity of the "heavier" man, Ms. Sharpe consistently testified that a "heavier" man "wearing a hat" was with her throughout the duration of the incident. She also testified that this was the man who "kept his hand in his pocket" and told her to "keep quiet" or "something would happen to her family." As to the "thinner" man, Ms. Sharpe testified that he was in the car initially, but left at some point and followed them in a different automobile. The only discrepancy in Ms. Sharpe's testimony occurred when she testified that, after the "heavier" man dropped her off in downtown St. Louis and ran to the car that had been following them, the driver of other car was also "heavy." Also, when testifying about the two identifications she made during the

---

7. Because we find the evidence sufficient to prove that Defendant took cash from Ms. Sharpe, we need not address Defendant's

claim that a cashier's check does not constitute "U.S. currency."

2005 photographic lineups, Ms. Sharpe stated that she identified a certain picture (Defendant) as the "heavy guy ... with the hat," and identified another picture (co-defendant Wilks) as "the man with the hat." These minor discrepancies in Ms. Sharpe's testimony do not deprive her testimony of all probative value. Moreover, the jury could have also considered other testimony from the police officers to support their finding that Ms. Sharpe identified Defendant as the "heavier" man who drove her car, threatened her, and took her money. *See Goodwin,* 43 S.W.3d at 818 ("[I]t [is] well-established law in Missouri that hearsay admitted without objection may properly be considered as evidence by the trier of fact."). Point denied.

*F. Sufficiency of the Evidence to Support Finding that Ms. Sharpe was "Unavailable"*

██ In Point VI, Defendant argues that the trial court erred in finding that Ms. Sharpe was "unavailable" because the State failed to present sufficient evidence that Ms. Sharpe was unavailable to testify at trial due to sickness or infirmity. Consequently, Defendant argues that the State's introduction of Ms. Sharpe's deposition testimony violated his confrontation rights under the Sixth Amendment.

██ The Confrontation Clause of the Sixth Amendment prohibits the admission of out-of-court testimonial statements unless the witness is unavailable and the defendant had a prior opportunity for cross-examination. *Justus,* 205 S.W.3d at 878 (citing *Crawford,* 541 U.S. 36, 124 S.Ct. 1354). A trial court's determination that a witness is "unavailable" is reviewed for an abuse of discretion. *State v. Williams,* 554 S.W.2d 524, 531–35 (Mo. App.1977). A witness may be "unavailable" if he or she is unable to testify at trial due to sickness or infirmity. Rule 25.16(b)(2); *Williams,* 554 S.W.2d at 531–

35. Here, Defendant did not preserve the alleged error for appeal, and, therefore, our review is for plain error, which requires a finding of evident, obvious, and clear error resulting in a manifest injustice or miscarriage of justice. *Lucio,* 247 S.W.3d at 134–35.

Prior to trial, Ms. Sharpe's doctor, Dr. Garret Hagen sent a letter to the prosecutor stating, generally, that Ms. Sharpe would not be available to testify at trial. During pre-trial proceedings, the prosecutor informed the trial court of the letter and explained that Ms. Sharpe was 83 years-old and that Ms. Sharpe's family informed her that she "had two surgeries in April to remove blood clots from her leg, [and] a surgery ... in May to restore the circulation in her feet because she suffers from diabetes." The prosecutor also told the court that she had been informed that Ms. Sharpe had a low red blood cell count and was receiving injections of Procrit. The trial court told the prosecutor that more details from Ms. Sharpe's doctor were necessary to prove that Ms. Sharpe was unavailable. Subsequently, the prosecutor submitted to the trial court medical records stating that Ms. Sharpe suffered from "congestive heart failure" and that around "April or May she star[ed] deteriorating with the surgeries and lack of circulation and several other things." The prosecutor also provided the court with a signed statement from Dr. Hagen indicating that Ms. Sharpe's attendance at trial could have serious and lasting harm to her physical/mental condition. Because Dr. Hagen's statement was not notarized, the court elicited testimony from the prosecutor's investigator who obtained the statement that Dr. Hagen identified himself to her, signed the statement in her presence, and indicated that everything in the written statement was correct. After hearing this testimony, the trial

court concluded that the evidence was sufficient to establish Ms. Sharpe's unavailability. Based on this evidence, the trial court did not abuse its discretion in determining that Ms. Sharpe was unavailable to testify. Point denied.

### G. Consistency of Jury's Verdicts

In Points VII and VIII, Defendant argues that the jury's verdicts were inconsistent in that the jury found: (1) Defendant guilty of the crimes against Ms. Sharpe and Mr. Tidwell, but found Mr. Wilks not guilty, and (2) that Defendant robbed Ms. Sharpe and obtained her money by impersonating a police officer. Because Defendant did not object to the verdict, we review for plain error only. *State v. Flemons,* 144 S.W.3d 877, 881 (Mo.App. W.D. 2004).

The trial court has an obligation to examine the verdicts returned by the jury and ensure that they are consistent. *Id.* at 883. "When a jury attempts to return verdicts that are inconsistent, the circuit court should reject the jury's verdict and send it back to the jury for further deliberation to resolve the inconsistency." *Id.* Whether a jury's verdicts are inconsistent requiring the trial court to reject the verdicts is a question of law reviewed *de novo. State v. Bell,* 62 S.W.3d 84, 93 (Mo.App. W.D.2001).

First, Defendant contends that the trial court erred in accepting the jury's verdicts finding him guilty of second degree robbery, kidnapping, impersonation of a police officer, and attempted stealing over $25,000 because the jury found co-defendant Wilks not guilty on those same counts. Defendant argues that this case is analogous to *State v. Flemons* where the appellate court set aside the defendant's conviction after concluding that the jury's verdicts were inconsistent. 144 S.W.3d at 883. In *Flemons,* the defendant was charged with possessing and intending to

distribute a controlled substance and unlawful use of a weapon. *Id.* at 881. To reach a guilty verdict on the unlawful use of a weapon charge, the jury was required to find that the defendant was not traveling in a continuous journey peaceably through Missouri. *Id.* The jury instruction further stated, "[a]s used in this instruction, an individual is not 'traveling peaceably' if he is committing the offense of possession of more than five grams of marijuana with the intent to distribute, deliver, or sell." *Id.* at 882. The *Flemons* court concluded that, because the "unlawful use of a weapon charge and Flemons' not traveling peaceably were dependent on Flemons' being found guilty of possession of marijuana with the intent to distribute[,]" the jury's verdicts finding the defendant guilty of the weapon offense but not guilty of the drug offense were inconsistent. *Id.* at 882–83.

In the present case, the verdict directors for the counts against Defendant and the counts against co-defendant Wilks both required the jury to find that Defendant committed all of the conduct elements of the crimes. The verdict directors differed, however, as to the *mens rea* element in that, to find Defendant guilty, the jury was required to find "that with the purpose of promoting or furthering the commission of [the charged offense], the defendant Thomas C. (T.C.) McGee acted together with or aided Andrea Wilks in committing the offense", and, to find co-defendant Wilks guilty, the jury was required to find "that with the purpose of promoting or furthering the commission of [the charged offense], the defendant Andrea Wilks acted together with or aided Thomas C. (T.C.) McGee in committing the offense." Therefore, unlike *Flemons,* the charges against Defendant were not dependent on the charges against Mr. Wilks because the jury could find that De-

fendant, acting with Mr. Wilks, committed all the conduct elements of the charged offenses but that Mr. Wilks, while present, lacked the requisite *mens rea*. *See id.* at 882 ("If the offense for which the defendant was acquitted requires proof of a unique element, distinct from the elements of the crime for which he was found guilty, the verdicts cannot be inconsistent.").

Moreover, even if the jury's verdicts were inconsistent, Defendant failed to establish that a manifest injustice occurred as a result. "An inconsistent verdict among several charges does not require reversal if there is sufficient evidence to support the finding of guilt on each charge." *State v. Bratton*, 92 S.W.3d 275, 278 (Mo.App. W.D.2002) (citing *State v. Clemons*, 643 S.W.2d 803, 805 (Mo. banc 1983)). Based on the evidence in this case, a rational juror could have found that Defendant committed all of the elements of the offenses against Ms. Sharpe and Mr. Tidwell and that Mr. Wilks assisted Defendant with the purpose of furthering the commission of the offenses.

Defendant also claims that the trial court erred in that the verdict directors failed to comply with the requirements of the Notes on Use to MAI–CR 304.04. The verdict directors for the offenses involving both Defendant and Mr. Wilks were modified pursuant to MAI–CR 304.04 to submit the case under aider and abettor liability. The Notes on Use caution that "[s]ince MAI–CR 304.04 involves imputing the conduct of another person to the defendant, it need not be used where the evidence shows that the defendant, by his own conduct, committed all the elements of the offense and there is evidence that another person was involved." Here, the evidence showed that Defendant committed all of the elements of the charged offenses, and therefore, including the aider and abettor instruction put an "additional and unneces-

sary burden on the prosecution." MAI–CR 304.04 Notes on Use 5(d). When the prosecution elects to assume this burden, the Notes on Use provide that the modified verdict director "must state 'the defendant *acted alone* or with the aid of . . . .'" (emphasis added). Here, the verdict director omitted the language which would have allowed the jury to convict Defendant even if he acted alone.

A trial court's submission of a jury instruction that violates the Notes on Use under MAI–CR constitutes error, and its prejudicial effect is judicially determined. *State v. Livingston*, 801 S.W.2d 344, 348 (Mo. banc 1990). Although the trial court in this case erred by giving an instruction in violation of MAI–CR 304.04 Notes on Use, "[a] criminal jury instruction that puts an additional burden on the state beyond that which is legally required in order to establish guilt, is not prejudicial to the defendant." *Id.* at 350. Here, the jury instructions required the State to establish all of the elements of the charged offenses as well as placed the "additional and unnecessary burden" on the State to prove aider and abettor liability. Under these facts, the deviation from MAI–CR 304.04 Notes on Use did not prejudice Defendant. *See id.*

Second, Defendant contends that the trial court erred in accepting the jury's verdicts finding him guilty of both second degree robbery and impersonating a police officer because those counts included inconsistent elements pertaining to the method in which Defendant induced Ms. Sharpe to withdraw money from her bank accounts. Specifically, to convict Defendant of second degree robbery, the jury was required to find that Defendant took U.S. currency from Ms. Sharpe and "in doing so threatened the immediate use of physical force on or against Maryland [sic] Sharpe for the purpose of overcoming re-

sistance to the taking of the property, forcing Maryland [sic] Sharpe to withdraw U.S. currency from her bank account." In contrast, to find Defendant guilty of false impersonation, the jury was required to find that Defendant held himself out as a police officer, and that "in that pretended capacity caused Maryland [sic] Sharpe to withdraw U.S. Currency from her bank account in reliance upon his pretended official authority[.]"

Contrary to Defendant's position, the jury's guilty verdicts on these two counts were not inconsistent as the jury could have reasonably concluded that Ms. Sharpe initially withdrew money from her bank in reliance on Defendant's pretended official authority, but that as the incident progressed, Ms. Sharpe turned over the money she withdrew from the other banks because of Defendant's threat of force. Moreover, the two means for inducing Ms. Sharpe to withdraw and surrender her money, though different, are not mutually exclusive, in that the jury could have also concluded that Ms. Sharpe was compelled both by Defendant's pretended authority and by his threat of force against her. Point denied.

*H. Prior & Persistent Offender Finding*

In Points IX and X, Defendant claims that the trial court erred in adjudicating him a prior and persistent offender because that the State failed to present sufficient evidence of his prior convictions and that the trial court failed to comply with the procedural requirements provided by Mo.Rev.Stat. § 558.021 (2000). Specifically, Defendant claims that: (1) the State did not offer the foreign convictions records into evidence, (2) the State did not prove that Defendant was represented by counsel in the prior proceedings, and (3) the trial court erred by allowing the State to present evidence of prior convictions not

pled in the information and by determining his status as a persistent offender after the case had been submitted to a jury. Defendant again asks us to review his unpreserved claim for plain error.

Pursuant to Section 557.036.3, upon a finding of guilt, a criminal defendant has a statutory right to jury sentencing. Mo. Rev.Stat. § 557.036.3 (Cum. Supp. 2003); *State v. Weaver,* 178 S.W.3d 545, 547 (Mo. App. W.D.2005). However, a defendant loses that right if the State pleads and proves that the defendant is a "prior offender" or "persistent offender," in which case the trial court, and not a jury, shall assess the punishment. Mo. Rev. Stat. § 557.036.4(2). A "prior offender" is defined as "one who has pleaded guilty to or has been found guilty of one felony." Mo. Rev.Stat. § 558.016.2 (Cum. Supp. 2005). A "persistent offender" is "one who has pleaded guilty to or has been found guilty of two or more felonies committed at different times." Mo.Rev.Stat. § 558.016.3. While a prior offender is only deprived of having the jury recommend the sentence, a persistent offender is also subject to enhanced punishment. Mo.Rev.Stat. § 558.016.7.

Section 558.021 sets forth the procedures for determining a defendant's status as a prior or persistent offender as follows: (1) the information or indictment must plead "all essential facts warranting a finding that the defendant is a prior offender, [or] persistent offender[,]" (2) the State must introduce evidence "that establishes sufficient facts pleaded to warrant a finding beyond a reasonable doubt that the defendant is a prior offender, [or] persistent offender[,]" (3) the trial court must make "findings of fact that warrant a finding beyond a reasonable doubt by the court that the defendant is a prior offender, [or] persistent offender[,]" and (4) "[i]n a jury trial, the facts shall be pleaded,

established and found prior to submission to the jury outside of its hearing[.]" Mo. Rev.Stat. § 558.021.1, 2.

In the instant case, the information alleged that Defendant was a prior and persistent offender due to two prior felonies: a 1990 Kansas conviction for unlawful use of a financial device and a 1966 Tennessee conviction for grand larceny. Before the case was submitted to the jury, the trial court held a hearing to determine whether Defendant was a prior and persistent offender. At the hearing, the State presented "certified copies" for both the Kansas and Tennessee convictions, which were reviewed by the trial court and defense counsel. The criminal records revealed that Defendant was given a four-year sentence for his Tennessee conviction and sentenced to 45 days in jail for the Kansas conviction. Ultimately, the trial court concluded that because Defendant received a sentence in excess of one year for the Tennessee conviction, he was a "prior offender." The court determined that evidence of the Kansas conviction was insufficient to prove a second felony.[8]

After the jury returned its verdicts finding Defendant guilty on all counts, the trial court held a subsequent hearing to determine whether Defendant was a "persistent offender." The prosecution presented evidence of two felony convictions for forgery committed in 1987 and 1995 in Tennessee. Based on this evidence, the trial court determined that Defendant was a "persistent offender," and the court proceeded to sentence Defendant.

▮▮▮ Defendant first argues that the State failed to present sufficient proof of his prior 1966 Tennessee conviction because Defendant's conviction records were not formally admitted as evidence. "When the showing of the existence of a court record 'is essential to enable a party to a cause to bear his burden of proof upon some matter at issue therein, then the record itself must be introduced in evidence, *absent an admission of its contents by opposing counsel.'"* State v. Hurst, 845 S.W.2d 669, 670 (Mo.App. E.D.1993) (emphasis in the original) (quotation omitted). While defense counsel did not expressly admit the contents of the conviction records, he reviewed the files, listened to the prosecutor summarize Defendant's convictions, and did not object to the contents of the conviction record. *See id.* at 671. Moreover, a certified copy of a foreign conviction is sufficient evidence to prove that a defendant is a prior offender beyond a reasonable doubt. *State v. Durham,* 676 S.W.2d 86, 87 (Mo.App. S.D. 1984). Accordingly, Defendant's foreign conviction record, which was treated as evidence by all the parties, was sufficient evidence to support the trial court's finding that Defendant was a prior offender.

▮▮▮ Second, Defendant contends that the State failed to prove that he was represented by counsel in the 1966 Tennessee case. Defendant relies on *State v. Cooper,* 16 S.W.3d 680, 682 (Mo.App. E.D.2000) which provides that "to use a prior conviction for purposes of a prior offender finding, the state must prove that defendant was represented by counsel or waived this right at the prior proceedings." *Id.* Under Section 516.016, however, there is no requirement that the State present evidence showing that the defendant was represented by or waived counsel in the prior proceeding to prove a defendant's status as a prior offender. *See* Mo.Rev.Stat.

8. For the purposes of finding a defendant to be a prior or persistent offender under Section 558.016, "[a] crime is a 'felony' if it is so designated or if the persons convicted thereof may be sentenced to death or imprisonment for a term which is in excess of one year." Mo.Rev.Stat. § 556.016.2; *State v. Yung,* 246 S.W.3d 547, 552 (Mo.App. S.D.2008).

§ 558.016. A review of Missouri case law reveals that this additional requirement found in *Cooper* and earlier cases derived from United States Supreme Court precedent holding that, pursuant to a defendant's Sixth Amendment right to counsel, "a [prior] conviction in a proceeding in which the defendant was not represented by or waived counsel *cannot be used for enhancement* in a subsequent proceeding in which imprisonment is to be imposed." *State v. Wilson*, 684 S.W.2d 544, 545 (Mo. App. S.D.1984) (emphasis added) (citing *Baldasar v. Illinois*, 446 U.S. 222, 100 S.Ct. 1585, 64 L.Ed.2d 169 (1980); *Burgett v. Texas*, 389 U.S. 109, 88 S.Ct. 258, 19 L.Ed.2d 319 (1967));[9] *see also State v. Sheets*, 468 S.W.2d 640, 643 (Mo.1971). When a defendant is determined to be a prior offender, but not a persistent offender, the defendant is not subject to an enhanced sentence. Rather, a prior offender determination causes the loss of a defendant's statutory right to have the jury "assess and declare punishment." Mo.Rev. Stat. § 557.036.3, 4. Because the trial court used the 1966 Tennessee conviction only to support its initial finding that Defendant was a prior offender, Defendant, at that point, was not properly subject to an enhanced sentence and therefore the State was not required to prove that Defendant was represented by or waived counsel during the proceedings of his prior conviction.

Last, Defendant contends that the trial court erred by after the case had been submitted to the jury: (1) allowing the State to present evidence of two prior felony fraud convictions it did not plead in the information, and (2) finding that Defendant was a persistent offender. In support, Defendant points to Section 558.021.2 which provides that to prove a defendant's status as a prior or persistent offender, "[i]n a jury trial, the facts shall be pleaded, established and found prior to submission to the jury...." Mo.Rev.Stat. § 558.021.2.

■ The State concedes that the trial court erred by allowing the State to prove up prior felonies not pled in the information after the case had been submitted to the jury. The only question remaining is the appropriate corrective action, if any, to remedy the trial court's error. Defendant asserts that this court should reverse the judgment and remand the case with instructions to re-sentence him free from the sentence enhancement permitted for persistent offenders. Conversely, the State contends that because the evidence elicited in violation of Section 558.021.2 was sufficient to support the trial court's finding that Defendant was a persistent offender, the trial court's failure to comply with procedures of Section 558.021 constituted harmless error. and, at most, this court need remand only for the State to amend its information to include the two forgery convictions offered as proof at the persistent offender hearing.

■ Our Supreme Court in *State v. Teer* explicitly held that "[t]he plain language of section 558.021.2 imposes a mandate requiring that prior offender status be pleaded and proven prior to the case being submitted to the jury." 275 S.W.3d 258 (Mo. banc 2009). As such, "[w]here the state fails to present evidence before the case is submitted to the jury, which is the timing the statute explicitly requires, there is no basis on which to sentence [a

---

9. *Baldasar* was later overruled by *Nichols v. U.S.* 511 U.S. 738, 748–749, 114 S.Ct. 1921, 1928, 128 L.Ed.2d 745 (1994) to the extent that *Baldasar* had previously held that a prior unrepresented misdemeanor conviction could not be used to enhance punishment upon a subsequent conviction, even when no imprisonment was imposed from the prior misdemeanor.

defendant] as a prior and persistent offender." *State v. Emery*, 95 S.W.3d 98, 101 (Mo. banc 2003). Therefore, contrary to the State's position, even if the evidence of the two forgery convictions was sufficient to prove Defendant's persistent offender status, the State's failure to present this evidence before the case was submitted to the jury violated the statutory mandates of Section 558.021 and deprived the trial court of a basis to sentence Defendant as a persistent offender. *See id.*

While we agree with Defendant that the trial court erroneously sentenced him as a persistent offender, our inquiry does not end there. To determine whether reversible error occurred, *Teer* requires that we consider whether Defendant has established actual prejudice with respect to the sentence. *Teer*, 275 S.W.3d 258. In *Teer*, the Court concluded that the defendant was prejudiced when the trial court's failure to comply with Section 558.021 resulted in the defendant's subjection to a twenty-year sentence instead of the four-year maximum sentence set by the jury, and, therefore, the Court reversed the sentence and remanded the case for sentencing in accordance with the jury's initial recommendation. *Id.* Here, unlike in *Teer*, Defendant has failed to prove prejudice with respect to his sentences because he was not entitled to jury sentencing and the sentences imposed by the trial court did not exceed the unenhanced statutory range the trial court could have imposed had it properly sentenced Defendant only as a prior offender. Accordingly, we decline to grant Defendant's request for re-sentencing. However, we recognize that there are "other possible ramifications of Defendant's sentence as a persistent offender, such as the possibility of it affecting his future parole." *State v. Halk*, 955 S.W.2d 216, 217 (Mo.App. E.D.1997); *see also State v. Williams*, 145 S.W.3d 874, 879 (Mo.App. E.D.2004). Therefore, while we

decline to remand for re-sentencing, we will correct the judgment and sentence to reflect sentencing as a prior offender only. *See Halk*, 955 S.W.2d at 217; Rule 30.23. Point granted.

*I. Inconsistency in Pronouncement of Defendant's Sentence and Written Judgment*

In Point XI, Defendant claims that the trial court plainly erred by entering a written judgment that imposed a seven-year sentence for stealing by deceit because the judgment materially differed from its oral pronouncement of Defendant's sentence when the trial court stated that it was imposing a five-year sentence. The State concedes the merit of this point.

"Because a judgment derives its force from the rendition of the court's judicial act and not from the ministerial act of its entry upon the record, an oral sentence generally controls over an inconsistent writing." *State v. Young*, 969 S.W.2d 362, 364 (Mo.App. E.D.1998). We need not remand the case when we can appropriately correct the sentence. *State v. Williams*, 797 S.W.2d 734, 738 (Mo.App. W.D.1990) (*disapproved on other grounds by Johnson v. State*, 938 S.W.2d 264 (Mo. banc 1997)). Accordingly, we correct the judgment to reflect a five-year sentence for Defendant's conviction of stealing by deceit. Rule 30.23. Point granted.

***Conclusion***

In light of the foregoing, we correct the sentence and judgment: (1) to delete references denominating Defendant as a persistent offender; and (2) to modify the written judgment to designate a five year sentence for Defendant's conviction of stealing by deceit. In all other respects,

Defendant's conviction and sentence is affirmed.

KURT S. ODENWALD, P.J. and
GLENN A. NORTON, J., Concur.